FOLTZ ET AL. *v.* THE BOARD OF COMMISSIONERS OF BEN-
TON COUNTY ET AL.

COUNTY COMMISSIONER.—*Term of Office.*—Where the districts of a county
for purposes of electing county commissioners were changed in March,
1870, and in the new district number 2 there was no resident commis-
sioner, and the term of office of two of the commissioners who resided in new
district number 1 expired in November, 1870, and the term of the third
commissioner who resided in new district number 3 expired in 1871, the
term of office of a new commissioner elected at the October election in
1870, in district number 2, commenced in November, 1870, and expired
November, 1873, and his successor elected in October, 1872, was entitled
to take the office in November, 1873.

From the Tippecanoe Circuit Court.

*Z. Baird, J. McCabe,* and *R. Jones,* for appellants.

*J. R. Coffroth, H. W. Chase,* and *J. A. Wilstach,* for appel-
lees.

WORDEN, J.—At the December session, 1873, of the Board
of Commissioners of Benton County, the board made the fol-
lowing order, viz.:

"Whereas there has been presented to the Board of Com-
missioners of the county of Benton, in the State of Indiana,
at its present session, a written petition purporting to be signed
by and to have attached thereto the signatures of twelve hun-
dred and twenty-one (1221) of the legal voters of said county,
requesting the relocating of the county seat of said county;
and there have been presented to the said board of commis-
sioners, and filed with said petition, the affidavits of sundry
credible persons, stating that the signatures to said petition are
genuine, and that the petitioners are legal voters of said county,
which petition reads as follows, to wit:" (Here the petition
is set out.) "Which petition is signed by Edward C. Sumner
and twelve hundred and twenty others; and whereas the said
petitioners have procured a conveyance to the Board of Com-
missioners of the county of Benton, in the State of Indiana,
by deed, a good title to two lots of ground, one containing two

acres and more as a site for a court-house, and the other containing one-fourth of an acre and 'more as a site for a county jail.   *   *   And said commissioners (petitioners ?) have also deposited with said board of commissioners the sum of one hundred dollars to pay an architect, and one hundred and fifty dollars to pay commissioners to assess damages as required by law ; and whereas the whole number of votes cast at the last congressional election in said county of Benton, in the month of October, 1872, being the last congressional election next preceding the presentation of said petition, as appears from due and legal evidence produced before this board, was fifteen hundred and ninety-one (1591); and the said board of commissioners, after having examined said petition and the affidavits presented and filed therewith, and having heard oral and documentary evidence in regard thereto, and having examined said deed, do now consider, find, order, and adjudge as follows, to wit : That twelve hundred and twenty-one (1221) of the legal voters of said county of Benton have requested in the manner required by law, and do by said written petition request, the board of commissioners to relocate the county seat of Benton county, by removing the same from the town of Oxford and locating the same at the town of Fowler, the same being more than three (3) miles, to wit: that the court-house shall be erected upon the following described land, to wit :" (Here the land conveyed for a site for the court-house is described.) "And the jail of said county shall be erected on the following described land, to wit :" (Here the land conveyed for a site for the jail is described.)   " That the above deed copied and set forth" (the deed is transcribed in the order, but omitted here) " does convey good title to the board of commissioners to said two lots of ground therein described, one for two acres and more for a court-house, and the other for one-fourth of an acre and more for a county jail ; and the board do further order and adjudge, that the prayer of said petition be and the same is hereby granted, and that the county seat of the said county of Benton be removed from Oxford and relocated at the town of Fowler, to wit, upon the lands con-

veyed and described by said deed; and the board now employ Messrs. G. P. Randall & Co., competent architects, of Chicago, Ill., to prepare and present to this board, at its next term, plans, specifications, and estimates for new county buildings, to be of brick and stone, and county offices to be fire proof, or as nearly so as practicable; the whole to be suitable for said county, and to cost exceeding fifteen thousand dollars and not over fifty-five thousand dollars; and the board now direct the auditor of said county to notify the Hon. Thomas A. Hendricks, Governor of said State, of the filing of said petition for the relocation of said county seat, to the end that commissioners may be appointed to examine the real property of said county at the town of Oxford, and assess the value thereof, as required by law."

This action was brought by the appellants to enjoin the removal of the county seat, in accordance with the order of the board of commissioners above set out. The action was brought in Benton, but the venue was changed to Tippecanoe county.

An answer to the complaint was filed, to which the plaintiffs demurred, for want of sufficient facts, but the demurrer was overruled, and the plaintiffs excepted. The plaintiffs declining to reply, final judgment was rendered for the defendants.

The board of commissioners, at the time the order was made for a removal of the county seat, consisted of Joseph Perkins, John F. Boswell, and R. M. Atkinson. Atkinson was not present when the order was made, but the business was transacted by the other two, Perkins and Boswell. It is insisted that Boswell was not at the time a county commissioner, but that one Henry Robertson was the legal commissioner instead of Boswell, and that the order was made by one legal commissioner only, and was therefore a nullity.

The question whether Boswell or Robertson was the legal county commissioner grows out of the following facts: In 1840, the county was divided into three commissioners' districts. This division continued until the March session of the

board, 1870, when the county was redistricted. The following diagrams will show the old and the new districts, together with the places of residence of such of the commissioners as it is necessary to notice :

Old Districts.

New Districts.

At the time of the election of 1870, hereinafter mentioned, William Marvin was the commissioner for old district number 1, having been elected in 1866, and holding over because there was no election in 1869, in consequence of the act of that year providing for biennial elections. 3 Ind. Stat. 232. Robert M. Atkinson was the commissioner for old district number 3, having been elected in 1867. Thus it is seen that the terms of the successors of these two commissioners, elected in 1870, commenced on the first Monday of November, 1870. John

W. Swann was commissioner for old district number 2, having been elected in 1868, his time expiring the first Monday of November, 1871. See *Douglass* v. *The State,* 31 Ind. 429. At the October election, 1870, Atkinson was elected commissioner for new district number 1, in which he lived, Robertson for new district number 2, in which he lived, and Perkins for new district number 3, in which he also lived. Atkinson and Robertson entered upon the duties of their office, and transacted the business of the board at the December session thereof for the year 1870. Swann, whose time had not expired under his election in 1868, resigned in January, 1871, and at the march session of the board for that year, the board, consisting of Robertson and Atkinson, made the following order, viz.:

" It is ordered by the board, that Joseph Perkins be and is hereby appointed a county commissioner in and for the third district of Benton county, to fill the vacancy occasioned by the resignation of John W. Swann."

Perkins acted as commissioner under the appointment until the first Monday of November of that year, when he commenced acting as such under his election of 1870.

On the theory that Robertson's term of office commenced, under the election of 1870, on the first Monday of November of that year, and would consequently expire on that day in the year 1873, the clerk issued the proper certificate, and the sheriff gave the proper notice, for an election of a commissioner for the second district, at the general election in the year 1872. Robertson and Boswell were both candidates, Robertson receiving six hundred and eighty-six votes, and Boswell seven hundred forty-four. Boswell was declared duly elected, received the proper certificate, qualified, and entered upon the duties of the office, and hence was the acting commissioner for district number 2, at the time the order was made for the removal of the county seat.

It is insisted by the appellants that Robertson was the successor of Swann, and that his term of office did not commence, under the election of 1870, until the first Monday of Novem-

ber, 1871, and consequently did not expire until the same day in the year 1874, and hence that the election of 1872 was a nullity, there being no vacancy then to be filled. Robertson himself, as well as the officers and people of the county, acted upon the theory that his term commenced the first Monday of November, 1870, and not the same day in the year 1871. He acted as one of the commissioners at the sessions of December, 1870, and March, 1871, and, for aught that appears, continuously from the December session, 1870, until the close of his supposed term, the first Monday of November, 1873. If his term expired then, the election in 1872 was properly held, and Boswell was the legal commissioner at the December session, 1873, of the board.

We do not see that Robertson can be said to have been the successor of Swann any more than he was the successor of Marvin or Atkinson. But, however this may be, the question does not, as we think, depend upon the order of succession. By the statute, the districts may be altered, but not oftener than every three years; and one commissioner must be elected from the residents of each district. 1 G. & H. 248, sec. 2. It has been held that a removal by a commissioner out of his district did not vacate his office. *Smith* v. *The State*, 24 Ind. 101. But it may be observed, incidentally, that a person, in order to be eligible, must be a resident of the district at the time of his election.

At the time of the election of 1870, new district number 2 was, in the fullest sense of the term, vacant. Neither of the old commissioners resided in it. If Atkinson or Marvin had resided in it, it would have made no difference, as their terms were about to expire.

Swann was not the commissioner for that district, for he resided in new district number 3, and if his functions as commissioner continued after the new districting (a point which we do not decide, no question having been made in reference to it), he must have been the commissioner for the last named district. It was therefore competent at that election to elect a commissioner for new district number 2. This was done;

Robertson was elected. He did not have to wait for Swann's time to expire before he could take the office; for Swann, as we have seen, was in no sense the commissioner for that district. There was nothing to prevent Robertson from taking upon himself the duties of the office on the first Monday of November, 1870, and we think that was the time when his term legally commenced. If we are right in this, his term expired three years from that time, and Boswell was rightfully elected in 1872, and was the legal commissioner at the December session of the board, 1873.

We are of opinion, therefore, that the objection thus raised is not well taken. This view renders it unnecessary for us to consider what would be the effect of official acts done by an officer *de facto* merely, for Boswell was, as we think, an officer *de jure* as well as *de facto*.

The other grounds upon which an injunction is sought are so fully covered by the case of *The Board, etc., Clay Co.* v. *Markle*, 46 Ind. 96, that we deem it unnecessary to extend this opinion by noticing them in detail. The learned and exhaustive opinion prepared by Judge OSBORN in that case covers all the questions arising in this, except that in relation to the organization of the board, which has already been considered.

The judgment below is affirmed, with costs.