STATE OF NEBRASKA, EX REL. JAMES P. CONNOLLY, V. D. M. HAVERLY, COUNTY CLERK OF DOUGLAS COUNTY.

FILED NOVEMBER 7, 1901.    No. 12,322.

1. County Commissioner's District: ALTERATION OF BOUNDARY: JURISDICTION OF BOARD: TIME LIMIT. The board of county commissioners in counties having over 125,000 population is empowered by section 54, article 1, chapter 18, Compiled Statutes, 1901, to alter the boundary lines of the different commissioner districts of such county, for the purpose of adjusting such districts to changing population, not oftener than once in three years.

2. ———: ———: ALTERATION PROSPECTIVE, AND DOES NOT OPERATE AS OUSTER. Such alterations of district boundary lines when made are prospective in character, and do not have the effect of depriving a county commissioner then holding office from exercising the duties thereof for the full term for which such officer was elected, even though by the change of boundary lines such officer's residence is without the boundary lines of the district from which he was elected.

3. Residence of Commissioner Outside of Limit. By such an alteration of boundary lines an officer becoming a resident of another commissioner district does not thereby succeed to and hold the office of commissioner from such other district after the expiration of the incumbent's regular term of office.

4. Mandamus to Compel Officer to Call Election Does Not Adjudicate Title to Office. In mandamus proceedings to compel a county officer to call an election in one commissioner district, a determination that a vacancy existed in such district, because the commissioner elected therefrom had, by a change of boundary lines, become a resident of another district, is not an adjudication that such commissioner would succeed the regular incumbent from such other district upon the expiration of the latter's term of office, nor that no vacancy would exist in such other district by reason of the expiration of the incumbent's regular term, to be filled at the succeeding general election.

5. Title to Office Can Not Be Tried in Mandamus. The title to an office can not be tried and determined in an application for a writ of mandamus. *State v. Plambeck*, 36 Nebr., 401.

6. Finding at Chambers Must Be Founded on Issues. The judgment or final order of a court or of a judge sitting at chambers must be founded upon and within the issues made by the pleadings.

7. Writ of Mandamus. A peremptory writ of mandamus must in all essential respects conform to the alternative writ.

APPLICATION for a writ of mandamus to compel the respondent, as county clerk of Douglas county, to place on the official ballots the name of the relator as a candidate for the office of county commissioner. *Writ allowed.* NORVAL, C. J., dissents.

*Smyth & Smith,* for relator.

*F. A. Brogan, Nelson C. Pratt* and *Harrison C. Brome,* contra.

HOLCOMB, J.

The relator by mandamus proceedings seeks to compel the respondent, as county clerk, to place his name on the official ballots as a candidate of the democratic and people's independent parties for the office of county commissioner of the second commissioner district of Douglas county. Douglas county has over 125,000 population and is and has been for several years divided into five commissioner districts under the law applicable to such counties. Compiled Statutes, 1901, ch. 18, art. 1, sec. 54. In June of the present year, the board of county commissioners by resolution duly adopted, changed and altered the boundary lines of the several commissioner districts for the purpose, as claimed, of more equitably adjusting the districts so as to conform to changes in population of the county since the formation of the several districts theretofore existing. It is practically conceded that the changes thus made in the boundary lines of the districts as then existing were a valid exercise of the power conferred on the board of county commissioners by the legislature, which under certain conditions authorizes action in relation to such matters. The power is, we think, clearly conferred—if not expressly, by unmistakable implication— in the section referred to, wherein is found provision for the districting of a county into five commissioner districts, and for the election of commissioners therefrom. And it is also provided that such districts "shall consist

of two (2) or more voting precincts, comprising compact and contiguous territory and embracing as near as may be possible, an equal division of the population of the county, and not subject to alteration oftener than once in three (3) years." The section cited and those immedi ately connected therewith provide further that the commissioners elected from the different districts shall have the qualifications of electors, and shall be elected in their respective districts at the annual general election and shall hold their office for three years, and until their successors are elected and qualified. By reason of provisions as to the length of office of the several commissioners when first elected after the act has become operative in any county, the terms of the five commissioners do not expire in the same year, and at each general election thereafter one or two of the five members constituting the board are to be elected for a term of three years, beginning in January following. It is not required of us, for the purpose of this case, to refer to or consider the action of the county board in changing the lines of but two of the commissioner districts of Douglas county, and the effect of such change on the members of the county board elected therefrom, as this will cover all matters involved in the controversy.

The direct question involved is whether it is legal and proper at the general election this year to elect a successor to the relator, James P. Connolly, whose term expires in January following. The relator is at present holding and filling the office of county commissioner, having been elected thereto from commissioner district number 2, in which he has been at all times and now is residing, and is a candidate for re-election. One Harte is also a member of the board of county commissioners, having been elected from commissioner district number 1, and was elected at the last general election for a term of three years, beginning January, 1901, or until January, 1904. Prior to the alteration of the boundary lines of the several districts made by the commissioners in June last,

which has been heretofore mentioned, the First commissioner district, from which Harte was elected, comprised the Second, Fourth and Seventh wards of the city of Omaha, while the Second district, from which Connolly was elected, included the Third, Eighth and Ninth wards of the city. By the change of boundary lines made by the commissioners, ward number 2, in which Harte resided, was dropped from the First district, and ward number 8 included within the new boundary lines, so that by the change of lines thus made, new commissioner district number 1 includes in its boundaries the Fourth, Seventh and Eighth wards. The boundary lines of the Second commissioner district were altered so as to include within the new district the First, Second and Third wards. It will be noticed that by the new alignment the Second ward, in the First district, is transferred to the Second district, and in lieu thereof the Eighth ward is transferred from the Second to the First district; that the Ninth ward is eliminated from the Second district, and the First ward included therein. Both Connolly, who resides in the Third ward, and Harte, in the Second, it will be seen, are now residents of the territory included within the boundaries of the new Second commissioner district. If we understand counsel aright, it is agreed on all sides that the act of the county commissioners in altering the boundary lines of the several districts by the adoption of the resolution referred to was a legitimate exercise of authority conferred on that body by the legislature. It is also agreed, and the argument on both sides is predicated on the theory, that by such rearrangement and change of boundary lines none of the commissioners then holding office could by such action be deprived of their office, or legislated therefrom, for and during the term for which they respectively were elected. It is argued, and we are disposed to think correctly, that the resolution changing the boundary lines was prospective in its operation and effect, and because thereof operative only at the expiration of the several terms of office of the dif-

ferent county commissioners then constituting the board. It is true that respondent's counsel argue that unless the act of altering the boundary lines can be construed in such a way as to give the new First district the right to elect a commissioner whose term is to begin when Connolly's ceases, and permit Harte, for the remainder of his term, to represent the new Second district, that the resolution of the county board ought to be declared invalid, because it is depriving the First district of representation on the board, and is, therefore, contrary to the spirit of the statute authorizing alterations, when considered with other provisions for representation on the board by districts. But it is contended that Harte, ever since the passage of the resolution changing the boundary lines, is representing, and will, until the expiration of Connolly's term of office, continue to represent, the district from and by which he was elected, or, in other words, that he is filling and will continue to fill the office, and perform the duties thereof, to which he was elected, notwithstanding the change in boundary lines, until an opportunity arises, when, presto! change! he is to become the commissioner for and from the Second district, and a new commissioner will succeed him in the office to which he was elected before his term to that office has expired. That is, it is argued that until there is a vacancy in some other district in which he resides, by the change of boundary lines, Harte occupies the office and represents the district by and from which he was elected, but, when a vacancy arises in the new district to which he has thus been transferred, he then ceases to fill the office to which he was elected, and becomes a commissioner from the Second district to succeed Connolly, whose regular term has expired. Having taken the position that, notwithstanding the change of boundaries, Harte continues to represent the district from which he was elected, and conceding that he can not by reason of a change in boundaries be deprived of his office, we think the only logical conclusion which can result from the attitude assumed

is that Harte holds the office of commissioner from the First district, and may hold and enjoy the emoluments of that office and perform the duties thereof for the term for which elected, unless a vacancy occurs in some of the modes provided by statute. To illustrate our position: If Harte's term of office had begun one year earlier than it did, and Connolly's one year later,—not an improbable condition of affairs,—all are agreed that, notwithstanding the change of boundary lines, each may of right continue in the office to which respectively elected, and representing the district from which elected until the expiration of his term, notwithstanding they were both residing in the same district under the new formation. Their successors would each have been chosen at the same general election, and no question would have arisen such as we are now called upon to decide. Holding that Harte can not be legislated out of office, and that at the expiration of Connolly's term he becomes his successor for the remainder of the term to which he was elected, may, as a matter of expediency, be entitled to consideration; but certainly there can be no logical process of reasoning engaged in, or sound rule of law given, which would justify such a conclusion. Harte has either been legislated out of the office to which he was elected, by the action of the county board, if valid, or he has the lawful right and authority to hold the office and exercise its functions until the expiration of the term for which he was elected. If a vacancy in the office results from the changes in boundary lines of the district, that vacancy exists at the time of passage and taking effect of the ordinance, or it does not exist until the term expires. It will not do, as it seems to us, to say that he fills the office for a portion of the time after the alteration is made, and is then transferred to another office, to which he was not elected, and a vacancy thereupon arises in the district from which he was elected. We opine that the county commissioners can not legislate him into another office, any more than they can legislate him out of the office to which he was elected. The

two offices are distinct, and a vacancy in either, by the expiration of the regular term, or from any other cause recognized by statute, is to be filled in the manner provided by law, and not by a transfer from one office to the other The statute provides what circumstances shall cause a vacancy in the office of county commissioner, and nowhere does it appear that the circumstances we are now dealing with shall operate as a vacation of the office to which a person has been duly elected. Section 101, chapter 26, providing what events shall cause a vacancy in any civil office, among other things, in subdivision 5 declares that a vacancy shall exist when the incumbent ceases "to be a resident of the state, district, county, township, precinct, or ward in which the duties of his office are to [be] exercised, or for which he may have been elected." In this case the change of boundary lines, with no change of residence, can not, we think, be said to be a change of residence, within the meaning of the statute. It contemplates a removal by the incumbent from the territory or district from which he was elected. In this case there has been no removal, and each of the two commissioners mentioned are, and have continued to be, residents of the district from which they respectively were elected. Harte is no less qualified to represent the district from which he was elected by the change of boundary lines, and the same may be said of Connolly. Harte's membership on the county board is not affected by a change in boundary lines. The law has provided that, for the purpose of an election, commissioner districts are to be formed, and commissioners elected therefrom, who shall hold their office for three years; and it would seem that, with no change of residence, every purpose of the statute is fully subserved by his performing the duties of his office for the term to which he was elected, regardless of change in boundaries of the district. It is probably true that the effect of these changes in boundary lines is to give some of the voting precincts or wards an opportunity to vote for a commissioner earlier than would

be the case under the old alignment, while others could not vote until after such time; and yet this is inevitable under any alteration of lines which is conceivable. The effect operates both ways, and of necessity exists under any possible plan by which boundary lines may be changed to conform to a changing and increasing population when commissioners for different districts are not elected in the same year.

The argument of the right of representation, when applied to voting precincts and wards, is misleading and confusing, in that under the law the representation on the county board is from a territory defined as a commissioner district, from which a commissioner is elected at stated periods, who fills the office to which elected for the time provided by law as a county commissioner from such district, and not from a ward or voting precinct therein.

In support of contention of counsel for respondent that Harte succeeds to the office now filled by Connolly at the expiration of the latter's term of office, and consequently no election for county commissioner should be held in that district at the general election this year, we are cited to the case of *Foltz v. Board of Commissioners*, 50 Ind., 562, decided by the supreme court of that state in 1875. That opinion gives, we think, indirect support to the views of counsel for the respondent. The question there arose as to when the term of office of a commissioner began who was elected after a county had been redistricted into new commissioner districts. The beginning of the term of the office of the commissioner whose office was in controversy was somewhat similar to what would be the case if a successor to Harte was elected at the present election, and his right to the office as the successor of Harte in the First district was in question. In that case Swann, who may be said occupied a position similar to that of Harte, was held not to be the commissioner of new district number 2; he having before the redistricting been a commissioner from old district number 2, a portion of which was included in new district 3. Says the

court: "Swann was not the commissioner for that district, [new district number 2] for he resided in new district number 3, and if his functions as commissioner continued after the new districting (a point which we do not decide, no question having been made in reference to it), he must have been the commissioner for the last named district. It was therefore competent at that election to elect a commissioner for new district number 2." It is to be noted that in the case above referred to there was a new districting of the county, all the old districts having lost entirely their identity. In that case old district number 3 was in the south part of the county, while new district number 3 was in the north part, and in no way connected with the territory included in the old district. Both the number and the territory included in the old districts were changed so as to be almost, if not entirely, incapable of identification. Taking the identity of the territory, rather than the number attached to the new districts, as they were completely changed, and Swann may be, and probably was, regarded as representing new district number 3, carved partially from old district number 2, while his colleague, whose term had expired, could very appropriately be said to be the commissioner from new district number 2, that being the one in dispute. In this view, the opinion is in harmony with the authorities we shall hereafter refer to. In the case at bar the districts have not lost their identity. The statute provides only for alteration of boundary lines, not the formation of new and independent districts. In no view of the case can it be said, nor is it contended, that Connolly is now, or has been, holding the office of commissioner from either the old or new district number 1; hence the term of office of commissioner from that district has not expired by the expiration of Connolly's term of office. But, if the opinion goes to the extent of holding to the rule contended for by respondent's counsel, it is clearly in conflict with the great weight of authority on the subject, and, in our judgment, not well reasoned, and therefore should not be fol-

lowed. We have several cases from other courts, to which our attention has been called, as to the effect of a change or alteration of boundary lines of districts from which officers have been elected before the expiration of their terms of office. The reasoning of these cases and the conclusions reached appear to us as sound and logical, and to be decisive of the question here in controversy.

In *Brungardt v. Leiker*, 42 Kan., 206, it is stated in the syllabus: "The office of a member of the board of county commissioners elected for three years is not vacated by a change in the boundaries of the commissioner districts, when the member continues to reside in the district for which he was elected, although by the change he was placed in another district." Says the author of the opinion, after stating the facts and referring to statutory and constitutional provisions relating to the subject, and enumerating the events which will cause a vacancy, all of which apply in the case at bar by reason of similar provisions in this state: "No one of these events has happened, but there has been an attempt to legislate him out of office by the other two commissioners, by a change in the districts. The county commissioners are authorized by statute to change the districts at least once in three years, so as to adjust them to the changing conditions and locations of the population of the county, (Comp. Laws of 1885, ch. 25, sec. 11,) but this provision must be construed so as to harmonize with that provision of the constitution that makes the term of county commissioners three years. The change in the districts, then, can only take effect, so far as the election of a county commissioner is concerned, at the expiration of the three years from the time from which the member was elected from the changed territory. Leiker's term of office will not expire until the second Monday in January, 1890."

In *State v. Nelson*, 34 Pac. Rep. [Wash.], 562, the supreme court holds that by changing boundary lines of a road district, so that the overseer was not a resident of the district from which he was elected after the change,

he could not thereby be deprived of his office, but for the purpose of electing a successor the act changing the boundary lines was prospective only. Says the court: "In holding as we do, that the commissioners have authority to make changes in road districts under the act in question, but that such changes are prospective, as affecting the office of road overseer, the letter and spirit of the constitution are fully maintained and force is given as well to the act of the legislature." On the same subject says the supreme court of Minnesota: "In our opinion, an order redistricting a county is merely prospective in its operation as to the election and qualification of members of the board of commissioners, and in no way affects the right to the office of those previously elected. There is nothing in the language of the statute to indicate that a redistricting is intended to have any retrospective operation. On the contrary, the language of section 94 favors the opposite view. The commissioner, it says, 'shall, at the time of his election, be a resident of said district, and shall reside therein during his continuance in office.' What this last clause has reference to is an actual change of residence, and not a change of district boundaries. The division of a county into districts is merely for election purposes. The duties of commissioners are not local, or to be performed in only a particular part of the county. On the contrary, they are merely members of an entire board, which acts as such for the entire county." *Norwood v. Holden,* 45 Minn., 316. See, also, *State v. Board of Supervisors,* 21 Wis., 443, 448.

The purport of, and conclusion to be drawn from all these decisions, is that, in redistricting or changing boundary lines of districts from which commissioners are elected, such acts are for election purposes only, prospective in their nature, and can in nowise affect the terms of office of those who have been regularly elected for a term of years, while residing in the district, and who of right may continue to hold such office and exercise the duties thereof until the expiration of the term for which

elected. These views in nowise violate the rights of any, and preserve to all officers who have been regularly elected the right to exercise the duties of the office for the full term, and give to statutory provisions for such changes full scope and effect, without violence to other provisions relating to the same same subject. Applying the rule to the case at bar, the successor of Connolly as commissioner from the Second district, whose term will expire in January next, should be chosen at the present general election.

It is also contended by the respondent that in an action of mandamus begun in the district court of Douglas county by the state, on the relation of one Victor Rosewater, against the respondent herein, to require him, as county clerk, to include in his call for an election the office of commissioner to fill vacancy from the First district, as constituted by the change of boundary lines, and to print on the official ballots the name of the republican candidate for that office, the same question heretofore considered was presented by the issues in that case, considered and determined by the district court, and therefore has become *res adjudicata,* and that the relator is estopped in this action from its prosecution, and from obtaining the relief applied for. By the issues raised in the case referred to, by the alternative writ and the return thereto, the question presented for adjudication was whether a vacancy existed in the new First commissioner district, to fill which candidates should be voted for by the electors thereof at the present general election. The relator, by his affidavit and the alternative writ issued thereon, claimed and alleged that, by reason of the change in boundary lines to which we have heretofore referred, Harte became a non-resident of the commissioner district from which he was elected, and that a vacancy existed, which should be filled at the coming general election. The question of whether there was in fact a vacancy in the First commissioner district was the only one presented, and the only question that could be decided under the

issues raised; and this could and did go no further than to determine that the names of candidates nominated for the supposed vacancy should be placed on the official ballots to be voted for at the general election to follow. Harte, the incumbent then filling the office as commissioner from that district, was not a party to the action; and, of course, his right to hold the office to which he had been elected, was not and could not be determined by the proceedings therein had. This fact alone should, it would seem, dispose of the defense of *res adjudicata* interposed in the case at bar. If, as we assume can not successfully be disputed, Harte's right to hold the office to which he was elected was not and could not be adjudicated in that proceeding, it will hardly be contended that his right to hold another office, or as the successor of Connolly after the expiration of his term, was a proper subject of adjudication under the issues therein tried. The rule is settled beyond dispute or cavil, that the right to hold the office, or the title thereto, can not be tried or determined by proceedings in mandamus. In *State v. Plambeck,* 36 Nebr., 401, it is held that: "The title to an office can not be tried and determined on an application for a writ of mandamus." Says the present Chief Justice who wrote the opinion of the court: "There can be no doubt that the claims of the respective parties to the office in question can not be adjudicated in this proceeding, since it is well established by frequent decisions of this and other courts that the title to an office can not be tried and determined on an application for a writ of mandamus. The proper remedy to try such question is by quo warranto"; citing *State v. Palmer,* 10 Nebr., 203; *State v. Jaynes,* 19 Nebr., 164; *People v. Goetting,* 30 N. E. Rep. [N. Y.], 968. To the same effect is *Kokes v. State,* 55 Nebr., 691, 695.

The direct issue presented by the alternative writ and the answer thereto, and the only issue that was before the court for adjudication was that by reason of the change in boundary lines, Harte, who had been elected

as commissioner from district number 1, resided in new district number 2, and that no commissioner then represented district number 1; the material allegation with respect thereto being: "That the commissioner districts of Douglas county, Nebraska, exist as in the resolution heretofore set forth and that district number one in said county consists of the Fourth, Seventh, and Eighth wards of the city of Omaha as the boundaries of said wards are now established, and that at the present time and at no time since the establishment of said district has said district been represented on the board of county commissioners." This was the pleading, with the denial thereof, which determined the issue therein to be tried. The application was based primarily on the idea that a change of boundaries, forming a new district, within whose boundaries the commissioner elected from that district as it originally stood did not reside, created a vacancy, and an election should be had to fill the same. The trial judge on the issues found in favor of the relator. It was also found specially that "Said Commissioner Harte resides in the commissioner district comprising the First, Second and Third wards of the city of Omaha, known and numbered under the redistricting of said county into commissioner districts, as 'Commissioner district number two.' I find that, after the going into effect of the redistricting said Douglas county into commissioner districts, said commissioner Harte will represent said commissioner district number two, comprising the First, Second and Third wards of the said city of Omaha, Nebraska." The finding by the judge hearing the case sitting at chambers that Harte, by reason of the change in boundary lines, was residing in the new Second district, and would hold office as commissioner from that district after the going into effect of the act of redistricting, and because thereof a vacancy existed in the First district, which should be filled at this general election, did not, we apprehend, determine the commissionership of the Second district, or the succession in the office then held by Con-

nolly. It was no more than a finding that Harte did not reside in new commissioner district number 1, and therefore a vacancy existed therein. The trial judge may have been, and probably was, of the opinion from the conclusion reached, that the board of county commissioners by changing boundary lines could create a vacancy in the office of one of the commissioner districts, which should be filled as in case of vacancies provided for by statute. The judge hearing the application for a mandamus was not called upon, nor was it within his province, under the issues, and with the parties before him, to try and determine the status of the office of the Second commissioner district, or whether an election should be called to elect a successor to Connolly. That question was not before him, and the finding he made with reference to Harte's right to hold office as a commissioner from the Second district, as the successor of Connolly, after the latter's term expired, can only be regarded as argumentative, and in support of the conclusion reached regarding the question under consideration. Neither Harte's right to hold office as the successor of Connolly, nor the relator's right, or that of any other person, to stand as a candidate for election to succeed Connolly, was within the issues, or involved in the question to be decided by the application of Rosewater to have the respondent mandamused to place on the ballots the names of candidates to fill the alleged vacancy in the First district; nor, as we have said, was Harte's right to hold the office to which he was elected, determined in that proceeding. It is fundamental that a judgment or final order made in the trial of a case must be founded upon and within the issues as made by the pleadings. Says SULLIVAN, J., in *State v. Dickinson*, 59 Nebr., 753, 758: "It is a rule everywhere recognized by courts administering our system of jurisprudence that the relief awarded by a court must respond to the issues— must be within the case made by the pleadings"; citing *Kitchen Bros. Hotel Co. v. Hammond*, 30 Nebr., 618; *Whitney v. Levon*, 34 Nebr., 443; *Lincoln Nat. Bank v.*

*Virgin,* 36 Nebr., 735; *Rockford Watch Co. v. Manifold,*
36 Nebr., 801; *Ross v. Sumner,* 57 Nebr., 588. In regard
to the same subject it is observed by the supreme court of
New Jersey in *Munday v. Vail,* 34 N. J. Law, 418: "Juris-
diction may be defined to be the right to adjudicate con-
cerning the subject matter in the given case. To consti-
tute this there are three essentials: First. The court
must have cognizance of the class of cases to which the
one to be adjudged belongs. Second. The proper parties
must be present. And, Third. The point decided must
be, in substance and effect, within the issue. That a court
can not go out of its appointed sphere, and that its action
is void with respect to persons who are strangers to its
proceedings, are propositions established by a multitude
of authorities." See, also, *Laflin v. State,* 49 Nebr., 614,
wherein it is held that the peremptory writ of mandamus
must conform strictly to the alternative writ. We there-
fore arrive at the conclusion that the thing adjudicated
in the district court, and the only thing that could be de-
termined under the issues therein presented, was that a
vacancy existed in the new First commissioner district,
because of the readjustment of the boundary lines of the
several districts as before existing, by which the commis-
sioner elected by and from that district became a resident
of another district, and that an election should be had
to fill such vacancy, and the order was accordingly issued
requiring the respondent to call such election. Whether
the commissioner elected from that district became en-
titled to succeed the relator, Connolly, or was legislated
out of office, were matters only for consideration in de-
termining whether a vacancy existed; and the finding in
respect thereof was no more than a reason given for the
conclusion reached, and whether right or wrong, did not
enter into and become a part of the question adjudicated.
It is frequently held that whether a court gives a right
or wrong reason for the conclusion reached, such reason
can not determine the correctness of the decision rendered,
as the controlling factor is, whether the conclusion

reached is right, and not whether the process of reasoning leading to such conclusion was in all respects proper. The plea of *res adjudicata* can not, therefore, be sustained.

From what has been said it follows that the relator is entitled to a peremptory writ of mandamus as prayed, and the same is accordingly directed to issue.

PEREMPTORY WRIT ALLOWED.

NORVAL, C. J., dissenting.