DEMING et al., Respondents, v. NELSON, Appellant.

·(210 N. W. 726.)

(File No. 5541.    Opinion filed November 20, 1926.)

1.    Judgment—Decree Declaring Rights in Land Can Be Attacked, in Action by Some of Parties Against One Claiming Under Other Parties, Only if Court Exceeded Jurisdiction.

Decree declaring respective rights of parties to certain land can be attacked, in action by some of these parties for possession and damages for detention agains<sup>t</sup> one claiming under other parties, only if court exceeded jurisdiction.

2.  Judgment—Decree Held Void in So Far as It Awarded Rights in Land to Some Defendants, Where They Had Not Claimed Any Title Adverse to Each Other.

Where, in suit by claimant of interest in land against others claiming interests therein, defendants did not claim any title adverse to each other, decree held void, in so far as it awarded some of defendants rights as against other defendants, since court should not go beyond pleadings to decree relief as between co-defendants.

3.  Judgment—Jurisdiction.

Defect in judgment, arising from fact that matter is not within issue, must avoid it.

Note.—See, Headnote (1), American Key-Numbered Digest, Judgment, Key-No. 493, 34 C. J. Sec. 834; (2) Judgment, Key-No. 252(3), 33 C. J. Sec. 93; (3) Judgment, Key-No. 251(1), 33 C. J. Sec. 93.

Appeal from Circuit Court, Sanborn County; HON. FRANK B. SMITH, Judge.

Action by William M. Deming and others against C. E. Nelson, whose true Christian name was to plaintiffs unknown. Judgment for plaintiffs, and defendant appeals. Reversed and remanded, with instructions.

*Gardner & Churchill*, of Huron, for Appellant.

*Null & Royhl*, of Huron, for Respondents.

MORIARTY, C.  This action was brought by the respondents for the possession of a quarter section of land in Sanborn county, damages for detention, and for the value of the use and occupancy of the land.

Appellant, in his answer, denies that the respondents own the land or are entitled to possession thereof. He asserts his own title and rightful possession, and he alleges certain acts of respondents which, he claims, should estop them from asserting title adverse to him.

From a judgment in favor of respondents, this appeal is taken.

The relevant facts are as follows: It is admitted that one Rachael J. Deming was the owner of the land in controversy in January, 1909, subject to mortgage liens aggregating $2,100, and that the claims of all parties to this action are based upon the title of said Rachael J. Deming, as their common source of title.

On the 9th day of January, 1909, the said Rachael J. Deming, was a widow. She had then living one daughter, Della Tompkins, one of the respondents herein, three sons, the respondents William M. Deming, John Deming, and Mark Deming, and one granddaughter, the respondent Arstein Jaquish, who was the only child of Lizzie Deming Jaquish, who died in 1894, and who was a daughter of Rachael J. Deming.

On said 9th day of January, 1909, Mr. D. D. Baldwin, a lawyer and notary public, was at the home of Rachael J. Deming, who was then confined to her bed by a protracted illness. Mr. Baldwin had a conversation with Rachael J. Deming, in which she stated that she wished to convey the land now in controversy, to her son William M. Deming, but, as a provision for her other children, William should pay her son John Deming, and her daughter, Della Tompkins, $250 each, and her son Mark Deming, $1,000. She further stated that she had taken care of and provided for her granddaughter, Arstein Jaquish, during her infancy and until she was seven years old, and that this granddaughter had had all she reasonably could expect from the grandmother's estate.

As a result of this conversation, Mr. Baldwin drew up a warranty deed in which Rachael J. Deming was named a grantor and William M. Deming was named as grantee, and which purported to convey the land now in controversy. This deed Rachael J. Deming signed and acknowledged before said D. D. Baldwin as notary public.

At the same time that said deed was so drawn and signed, Mr. Baldwin prepared three notes, one for $250, payable to Della Tompkins, one for $250, payable to John Deming, and one for $1,000, payable to Mark Deming. William M. Deming then and there signed said three notes, and it is admitted that he afterwards paid them.

Respondents Della Tompkins and William M. Deming were present during the drawing and signing of the deed and notes, and during all the conversation leading up to their preparation and signing.

Mr. Baldwin took the deed and notes with him when he returned to his office, without receiving any instructions as to de-

livery of the papers. He kept the deed in his possession until January 7, 1910, when he filed it for record in the office of the register of deeds of Sanborn county. After the recording of the deed, it was delivered to William M. Deming by Mr. Baldwin.

Three days after she signed and acknowledged this deed, Rachael J. Deming died intestate, leaving as her only heirs at law the five respondents herein.

At the time of his mother's death the respondent William M. Deming was residing, with his family, on the land in controversy and he continued to reside thereon until on or about March 1, 1917. During the time he so occupied the land, he paid off the $2,100 of mortgages which incumbered the land at the date of his mother's deed to him, but, on the strength of his record title, he placed other mortgages on the land, of which a mortgage for $6,000 still remains unpaid. During the time he occupied the land, he expended about $900 in improvements consisting of buildings and additions to buildings which he erected upon the land. He also paid the taxes on the land and interest on the mortgage indebtedness.

On November 11, 1916, William M. Deming, in addition to the $6,000 secured by a mortgage on the land in controversy, owed numerous debts aggregating something over $6,000. On that day, he executed and delivered to the grantees named therein a warranty deed conveying the land in controversy to A. W. Paulson, E. B. Raesly, and A. N. Johnson, as trustees. The deed was silent as to nature of the trust, but the evidence shows that it was understood between the parties to the deed that the trustees were to have the right to sell the land, apply the proceeds to the payment of Deming's debts, and pay to Deming any excess there might be after paying the debts. About March 1, 1917, William M. Deming moved off the land in controversy, and the trustees rented the land to one Johnson for the farming season of 1917. In October, 1917, the trustees sold the land to the appellant for $12,800, giving him a purchase-money contract which has never been recorded. Appellant Nelson took possession of the land in March, 1918, and remained in possession thereof up to the time of trial of this action. He paid the trustees $500 of the purchase price at the date of the contract, $2,500 on March 12, 1918, and $3,800 on March 1, 1919, completing the payment of

the purchase price named in the contract. No deed conveying the land to the appellant has ever been executed by the trustees. While in possession of the land, appellant paid taxes and interest and expended considerable amounts for improvements placed upon the land.

In January, 1917, the respondent Arstein Jaquish began an action in the circuit court of Sanborn county, in which William M. Deming, John Deming, Mark Deming, A. W. Paulson, E. B. Raesly, and A. N. Johnson were named as defendants. In her complaint in this action, the plaintiff set forth the facts as to her relationship to Rachael J. Deming, deceased, and alleged that on 12th day of January, 1909, Rachael J. Deming was the owner of the land in controversy and of certain personal property, and on that day died intestate, that no proceedings to probate the estate of said Rachael J. Deming were ever had, but that there are no claims against the estate, and that she (the said plaintiff), upon the death of her said ancestor, became the owner of an undivided one-fifth interest in the property of said estate and is still entitled thereto; and she asks that the title to an undivided one-fifth interest in the land be quieted as against the defendants, that the right, title, and interest of all the defendants in said land be determined, and that the interest of the defendants Paulson, Raesly, and Johnson in the said land be adjudged to be inferior to plaintiff title in and to an undivided one-fifth interest therein.

The defendant Della Tompkins made no appearance in the action. The defendant William M. Deming, in his answer, admits the relationship of the plaintiff to Rachael J. Deming, deceased, but alleges that, on the date of the death of said Rachael J. Deming, he was the owner in fee simple and in possession of said land and continued to be the owner thereof until November 11 1916, when he conveyed said premises to defendants Paulson, Raesly, and Johnson, in trust for the use of certain creditors, and that said trustees still have the title to and possession of the land for such use and purpose.

The defendants John Deming and Mark Deming answered separately, but in identical language, admitting the relationship of appellant to Rachael J. Deming, deceased, but alleging that on January 9, 1909, said decedent, for a good and valuable considera-

tion, conveyed the land in controversy to the defendant William M. Deming, that on November 11, 1916, said defendant William M. Deming conveyed said property to Paulson, Raesly, and Johnson, as trustees, and that since that time said trustees have had title and possession of the premises for such purpose.

The defendant trustees answered jointly, alleging the same facts as alleged in the answers of the other defendants.

On January 17, 1917, the plaintiff Arstein Jaquish caused to be filed in the office of the register of deeds of Sanborn county, a notice of lis pendens, setting forth the venue and title of the action and containing the following words:

"Notice is hereby given that the above-entitled action is being prosecuted for the purpose of determining the right, title, and interest of the parties to this action in and to the southeast quarter of section 11, township 108, range 59, Sanborn county, S. D., and particularly to quiet title to the plaintiff to an undivided one-fifth interest in and to said lands."

This action of Jaquish v. Deming et al. was not tried until April 20, 1920, and, as a result of the trial, the circuit court entered a decree declaring the deed from Rachael J. Deming to William M. Deming null and void, on the ground that it had never been legally delivered. And this decree not only quieted the plaintiff's title to an undivided one-fifth interest in the land, but also decreed that each of the defendants Delia Tompkins, John Deming, and Mark Deming owned an undivided one-fifth interest in the land, that the defendant William M. Deming had conveyed to the trustees only such equity as might remain from his one-fifth interest, after the satisfaction of the entire mortgage debt of $6,000 out of such one-fifth interest. That decree was entered on May 11, 1920, and no appeal was ever taken therefrom.

On the trial of the action involved in the appeal now before this court, the plaintiffs put in evidence the decree in the former case (Jaquish v. Deming et al.) and contended that, said decree having adjudged the deed from Rachael J. Deming to be void, and Arstein Jaquish, John Deming, Mark Deming, and Della Tompkins to be the owners of four-fifths of the land in controversy, that decree was binding on the defendants in the instant case, and made the question of title res judicata as to all the parties.

The trial court sustained that contention and made a finding setting forth in full the findings, conclusions, and decree in Jaquish v. Deming et al., and also made and filed a conclusion of law that the said decree was a valid and final decree binding upon all of the parties and on their successors in interest, and binding upon the appellant Nelson as fully as upon his grantors, Paulson, Raesly, and Johnson.

The appellants assign as error the making of that conclusion and, while there are other assignments of error, the correctness of the conclusion is the vital question in this appeal. If the conclusion is right, then the respondents cannot be estopped by any acts which took place prior to the trial in Jaquish v. Deming. On the other hand, if the conclusion is wrong, then, in the trial of the instant case, the trial court should have received and considered the evidence offered on the question of estoppel.

[1] If the court had jurisdiction to enter the decree which it did enter in Jaquish v. Deming et al., then it cannot be attacked in the action now before this court. On the other hand, if, in entering that decree, the trial court exceeded its jurisdiction, the decree is properly attacked by the appellants.

[2] In Jaquish v. Deming et al., the respondents Della Tompkins, William M. Deming, John Deming, and Mark Deming were codefendants with Paulson, Raesly, and Johnson, appellants herein. None of said respondents, when made defendants in Jaquish v. Deming, claimed any title adverse to appellants Paulson, Raesly and Johnson.

The rule is thus stated in Black on Judgments, § 242:

"Where the issues in a suit in chancery are so framed as to present a controversy between the complainants on the one side and the defendants on the other, the court should not go beyond the pleadings and decree relief as between the codefendants."

The case of Munday v. Vail, 34 N. J. Law 418, is a leading case on this point, and, in that opinion, the New Jersey court says:

"A judgment upon a matter outside of the issues must, of necessity, be altogether arbitrary and unjust, as it concludes a point upon which the parties have not been heard. And it is upon this very ground that the parties have been heard, or have had the opportunity of a hearing, that the law gives so conclusive an

effect to matters adjudicated. And this is the principal reason why judgments become estoppels."

And in Graham v. La Crosse & Milwaukee Railway Co., 3 Wall. 704, 18 L. Ed. 247, the United States Supreme Court, referring to authorities cited in support of the rule that judgments are not subject to collateral attack, says:

"But neither of these cases assert the doctrine maintained here for the appellants, that a court of equity may decree between defendants when neither pleadings nor proofs show any controversy or adverse interest between them. Nor have we been referred to any case which does assert that doctrine."

[3] This court in Seiberling v. Mortinson, 10 S. D. 644, 75 N. W. 202, cites with approval the case of Munday v. Vail, supra, and quotes therefrom a passage containing the following language:

"Jurisdiction may be defined to be the right to adjudicate concerning the subject-matter in the given case. To constitute this, there are three essentials: First, the court must have cognizance of the class of cases to which the one to be adjudged belongs; second, the proper parties must be present; and, third, the point decided must be, in substance and effect, within the issue."

"A defect in a judgment, arising from the fact that the matter decided was not embraced within the issue, has not, it would seem, received much judicial consideration; and yet I cannot doubt that, upon general principles, such a defect must avoid a judgment."

This court, in Seiberling v. Mortinson, supra, adopted the doctrine of the New Jersey court as so stated.

This decision is further supported by the following cases: Clemons v. Heelan, 52 Neb. 287, 72 N. W. 270; Springfield F. & M. Ins. Co. v. Peterson, 93 Neb. 446, 140 N. W. 760; Peterson v. Hartford Ins Co., 93 Neb. 448, 140 N. W. 761; Satterlund v. Beal, 12 N. D. 122, 95 N. W. 518; State v. Haverly, 62 Neb. 767, 87 N. W. 959; Schuster Bros. v. Davis Bros., 185 Iowa, 143, 170 N. W. 292; Lee v. Pauly Motor Truck Co., 179 Wis. 139, 190 N. W. 819; Anglea v. McMaster, 17 Okl. 501, 87 P. 660; Davidson v. Davidson R. E. Co., 249 Mo. 474, 155 S. W. 1; Becovitz

v. Sapperstein, 46 Ind. App. 339, 92 N. E. 551; Browne Grain Co. v. Merchants Nat. Bank (Tex. Civ. App.) 173 S. W. 912.

The judgment appealed from in the instant case is based wholly upon the conclusion of the trial court that the decree in Jaquish v. Deming "is a valid and binding decree and is binding on all of said parties, their heirs and successors in interest, and that the defendant, C. E. Nelson, is bound by said decree as fully and completely as are his grantors Paulson, Raesly, and Johnson." And as that decree was void, in so far as it purported to award to the defendants Della Tompkins, William M. Deming, John Deming, and Mark Deming rights as against Paulson, Raesly and Johnson, which rights Della Tompkins had not claimed and the three Demings had, in their answers, affirmatively disclaimed, the judgment in the instant case is erroneous. The trial court should have held that the decree in Jaquish v. Deming was void, in so far as it awarded any interest in the land to Della Tompkins or either of the Demings, and it should have made proper findings upon the question of estoppel of the plaintiffs.

The judgment appealed from is reversed and the case is remanded to the trial court, with instructions to that court that it make findings and conclusions and enter judgment in accordance with this decision.

Reversed and remanded.