GEORGE DINGWALL v. THE COMMON COUNCIL OF THE
CITY OF DETROIT.

[Two cases.]

*Municipal corporations—Meeting of council—Adjournment—Detroit
city charter—Boards of election inspectors and of
registration.*

1. No presiding officer can arbitrarily adjourn a meeting in defiance of the majority present.

So *held*, where at a meeting of the common council of the city of Detroit, after the yeas and nays were legally demanded on a motion to adjourn, the president, without calling the roll or putting the question, declared the council adjourned, and left the chair.

2. After a meeting of the common council of the city of Detroit had been *illegally* declared adjourned by the president, and he had left the chair, an alderman was called to fill his place, whereupon, for the purpose of breaking the quorum and preventing the transaction of any further business, eleven members of the council left the council chamber, and the fifteen members remaining—being one less than a quorum—made the assignments of aldermen and appointments of other persons as chairmen of the boards of inspectors and of registration in their respective districts, as provided by the charter, and also filled vacancies in said boards, which conducted the registration of voters as thus constituted. And it is held that the voters of Detroit cannot be disfranchised by such illegal proceedings; that the registration must be held valid, and to that end the appointees are held to be *de facto* officers as far as they have acted, but that none of them can take any further action under such appointment. And it is further held to be the duty of the common council immediately to make a new designation and appointment of the chairman of each board of inspectors, and that the vacancies in the boards of inspectors can only be filled at the opening of the polls, by the electors then present, who can also fill the chairmanships, if the council, by breaking a quorum or by a tie vote, fail so to do.

*Mandamus.* Submitted October 28, 1890. Granted in part October 29, 1890.

Relator applied for *mandamus* to compel respondents to expunge from the record of their proceedings a resolution declaring his seat in the council vacant, and to compel them to designate the chairmen of the several boards of election inspectors and of registration. The facts are, stated in the opinion.

*John J. Speed,* for relator.

*Charles W. Casgrain, C. S. McDonald,* and *Edwin F. Conely,* for respondents.

MORSE, J. These applications for *mandamus* grow out of a disgraceful squabble between two factions of the common council of the city of Detroit, each seeking to get the advantage of the other in the appointment of election inspectors, who are *ex officio* members of the boards of registration.

The charter of the city of Detroit, as amended by Act No. 564, Local Laws of 1887, page 909, provides for the election by ballot of five inspectors for each election district at the annual November election, who hold their offices for one year, or until their successors are duly elected and qualified. There is no provision for filling vacancies, except by the people at the polls. As it is provided that only three candidates can be voted for by any one elector, the minority party in each district is sure of representation on these boards in every district, and the chairman of the board, who is appointed as hereinafter stated, becomes a potent political factor on the board.

The charter provides that the chairman of each board of inspectors shall be one of the aldermen of the ward,

or some elector of the election district, who are to be appointed as follows:

" SEC. 4. The common council shall, at least two weeks previous to each general election, assign and designate the aldermen from each ward to election districts therein, and shall at the same time appoint a suitable person, who shall be a qualified elector in the district, to each of the other districts in said city, and the alderman and person so appointed shall, respectively, be the chairman of the board of inspectors and of registration in their respective districts."

The chairman and five inspectors constitute these boards. They appoint the clerks of election. Any vacancy in those chairmanships, occasioned by death or removal from the district, is to be filled by the common council. If they neglect or refuse to do so, or a vacancy occurs from any other cause, the vacancy is to be filled by the people at the opening of the polls at any general or special election. Local Acts of 1887, p. 910.

The common council met on October 21, 1890, and were proceeding to perform this duty, when Alderman Jacob introduced a resolution declaring the seat of Alderman Dingwall of the first ward vacant, because of alleged removal therefrom. From the return of the majority of the aldermen present, and the city clerk, it appears that, thereupon, Alderman Vernor made a motion to adjourn. The yeas and nays were demanded by a sufficient number of aldermen, but, without calling the roll or putting the question, President Griggs declared the council adjourned, and left the chair. Alderman Vernor, who was president *pro tem.*, refused to preside, and thereupon Alderman O'Regan was called to the chair on motion and vote, and business was resumed. It pretty clearly appears from all the papers in the case that thereupon the minority—to wit, 11 members—left the council chamber for the purpose of breaking the quorum and preventing any further

business.   The balance of the council—15 in number and
1 less than a quorum—went on and transacted business,
among other things assigning the aldermen, except in the
first ward, to chairmanships, and other persons to the
same, in conformity to the statute, and also going further
and filling vacancies in the boards of inspectors.   The
record shows that the city clerk called the names of the
26 aldermen present at the opening of the meeting on
every resolution, and recorded them as voting in the
affirmative, Alderman Dingwall among the rest, although,
after the 11 had left, the resolution declaring his seat
vacant was passed.

The minority were not justified in leaving the council,
and the action of President Griggs in declaring the coun-
cil adjourned was an outrage and cannot be excused.   No
presiding officer can arbitrarily adjourn a meeting in defi-
ance of the majority present.   It is very evident that the
majority present were not in favor of adjournment,
because they stayed and transacted business after the
minority left.   And these men who thus left the council
chamber at the last meeting at which this designation
and selection of chairmen of the different boards could be
made under the strict letter of the charter, are entitled
to no favor at the . hands of the courts.   But this does
not excuse the illegal action of those who remained.   They
well knew that they were without a quorum, and the
counting of absent members, and recording them as vot-
ing in the affirmative on all questions, was also an inex-
cusable outrage, as was also the attempted unseating of
Dingwall.   The acts of both factions were exhibitions of
political partisanship both unlawful and indecent.   Such
acts do not help either party, but serve only to disgust
honest men of all parties.   The courts cannot allow such
proceedings to stand.

But the people of Detroit cannot be disfranchised by

such proceedings, and the registration in that city which has now taken place, the appointees of the meeting of October 21 acting upon such boards, is valid, and cannot be interfered with. They must be held to be *de facto* officers as far as they have acted, from the very necessity of the case. But none of them can act hereafter. It is the duty of the common council *immediately* to make a new designation and appointment of the chairman of each of the boards. The vacancies in the election inspectors can only be filled at the opening of the polls by the electors then present. And if the council, by the breaking of a quorum, or a tie vote, should neglect or refuse to fill the chairmanships, then the electors can do so at the opening of the polls.

In relation to Alderman Dingwall it appears that he has since been recognized by the council, and the action taken on October 21 is admitted in the answer to have been illegal. No order is necessary on his application to have the portion of the record affecting him expunged.

We cannot grant the order in full as prayed in the other case; but a writ of *mandamus* may issue to the common council requiring them to meet on Friday evening, October 31, 1890, at 9:30 o'clock, city time, and assign and designate under the charter the persons to act as chairmen of the different boards of election inspectors, at which meeting Alderman Dingwall must be recognized as an alderman.

No costs will be allowed on either motion.

CHAMPLIN, C. J., LONG and GRANT, JJ., concurred. CAHILL, J., did not sit.