# CHARLESTON.

N. H. FRANKLIN *et al* v. THE COUNTY COURT OF MCDOWELL COUNTY *et al.*

Submitted May 7, 1920.    Decided May 11, 1920.

1. ELECTIONS—*Political County Committee May Revoke Appointment of Commissioners and Poll Clerks at Primary Election and Make Other Appointments.*

   A political county committee contemplated and authorized by section 26a (3) of chapter 3, Code of 1918, after having designated persons for appointment as commissioners and poll clerks to represent its party in a primary election, pursuant to power conferred upon it so to do by section 26a (4) of said chapter, and before the designations so made have been acted upon by the county court of the county, may revoke or rescind them and make others which the appointing tribunal must accept.  (p. 482).

2. SAME—*Member of Political County Committees Recognized After Disqualification is De Facto Member.*

   Although a member of such a committee may forfeit or lose his right to membership therein and become liable to ouster from his position by proper procedure, by a change of his residence, a member who has so disqualified himself, but continues to hold his place in the committee, and is recognized as

a member thereof and allowed to participate in its meetings as such, by a majority of the remaining *de jure* members, is a *de facto* member and his acts as such are valid as to the public and third persons. (p. 482).

3.  SAME—*Acts of Six Members of Political County Committee of Twelve, Together With a De Facto Member, Held Valid.*

If, in a meeting of such a committee, the entire membership of which is twelve, held pursuant to notice to all of the members, seven attend, two of whom are *de facto* members only, and one of such *de facto* members resigns and the vacancy so occasioned is filled by the action of the other six members in attendance, the person so elected or appointed to fill the vacancy is at least a *de facto* member, whether the six remaining after the resignation constituted a quorum of the committee or not, and subsequent proceedings of the committee at the same or another meeting, effected by him and the six members by whom he was appointed, are valid as to the public and third persons. (p. 482).

4.  OFFICERS—*One May Become a De Facto Officer if He in Good Faith Holds Position Under a Bona Fide Color of Election or Appointment.*

A valid election or appointment of a person to an office or other position, at or before his entry upon its duties, is not a *sine qua non* to his status of *de facto* officer. It suffices that he is not a mere usurper of the position he holds, and that he *bona fide* claims and holds it under color of an election or appointment, irregular and unauthorized though it may be. p. 485).

5.  SAME—*Latest List of Primary Election Officers Designated by County Political Committee Must be Adopted by County Court.*

If, to a county court charged with the duty of appointing primary election officers, upon designations made by a political county committee, two inconsistent lists of persons so designated are presented, both authorized at different meetings of the committee, but one of which, authorized by a certain meeting, has been revoked or annulled by the action of a subsequent meeting at which the designations in the other list were made, it is the duty of the county court to recognize the designations made at such subsequent meeting, in the absence of any protest by members of the committee, and upon failure to do so, or its adoption of the designation so first made, it will be compelled to do so by mandamus, upon a proper application therefor. (p. 485).

6. MANDAMUS—*Will Lie to Compel County Court to Adopt Subsequent Designations for Primary Election Officers by County Political Committee.*

Although, in such a case, the subsequent designations were made by a bare majority of the committee, and the others are insisted upon by the remaining members of the committee, the writ will require the court to adopt all of said subsequent designations and appoint the persons named in them. (By three judges.) (p. 485).

(LYNCH, JUDGE, absent).

Original mandamus by the State, on relation of N. H. Franklin and others, against the County Court of McDowell County and others, to compel the appointment of persons designated on relators' list as officers to represent a party at a primary election.

*Peremptory writ of mandamus awarded.*

*S. B. Avis* and *Joseph M. Crockett,* for relators.

*Sanders & Crockett, Geo. W. McClintic* and *Arthur G. Froe,* for respondents.

POFFENBARGER, JUDGE:

Factional trouble or rivalry by competing organizations or constituent elements in the Republican Party of McDowell County, expressing itself through the action of the executive committee of the party, brought about presentation to the County Court of that county of two lists of persons for appointment as officers to represent the party in the primary election to be held for the nomination of candidates, May 25, 1920, one by McGinnis Hatfield, claiming to be the chairman of the committee, and the other by N. H. Franklin, making a like claim on behalf of himself. The former list having been accepted by the court and the persons therein named appointed, the relators, denying authorization of the list so accepted, by the committee, and the right of said Hatfield to present it, having protested against acceptance thereof, and relying upon the authenticity of the Franklin list and their right to have the persons named in it appointed, seek a peremptory writ of mandamus to compel the county court to appoint the persons designated in said last mentioned list.

While the occasion of the controversy is rivalry, the means or agency of the creation of this particular situation is alleged disqualification of two members of the committee to hold their positions as members and participate in its deliberations, by reason of non-residence in the districts for which they were elected. Both were indisputably elected to membership in 1916 and were then eligible. One of them, John W. Cooksey, after having been so elected, actually removed to the State of Texas and resided there for about a year. Then he came back to Mc-Dowell County, but to a district thereof other than the one for which he was elected. There is much evidence tending to prove he left the county without intent to return and with intent to make his permanent residence elsewhere, and also evidence tending to prove that, on his return to the state and county, he did not intend to reside in the district for which he had been elected. But he claims his absence from the district was temporary only, and that he never intended to relinquish his residence in it. The other, Dr. E. F. Peters, soon after his election as a representative of another district, took up his abode at Princeton in Mercer County and still resides there, although he spends a great deal of his time in McDowell County and in the district for which he was elected. The statute requires all members of executive committees selected for each political division to reside within "the county or district, senatorial or magisterial, from which chosen." Code of 1918, ch. 3, sec. 26a (3). Notwithstanding their apparent ineligibility to retain their positions as members of the committee, both of these men participated in the proceedings upon which the relators rely, Peters only temporarily and slightly, and Cooksey throughout. The latter is one of the relators in this proceeding. On behalf of the respondents, their right so to participate is denied, as is also the validity of the proceedings in which they took part.

Validity of these proceedings is essential to the relief sought by the relators. If the list presented by McGinnis Hatfield was legally authorized, the respondents had clear and undoubted right to adopt it. If it was not and the one presented by the relators was also unauthorized, the respondents could make their own selections of election officers from members of the party. Code of 1918, ch. 3, secs. 26a (4) and 26a (34).

And; even though the list presented by Hatfield was original-ly authorized by the committee, it may have been revoked and the action of the committee in authorizing it afterwards re-scinded, if the proceedings upon which the relators rely are valid. The meeting upon whose action he relies was held Jan-uary 31, 1920, and those under whose action the relators claim were held February 28 and April 10, 1920, respectively.

The power and authority of a statutory political committee to rescind, abrogate or alter, at a subsequent meeting, what it did at a previous one, before consummation, in the absence of a statutory provision inhibiting such action, cannot be doubted, and there is no such limitation upon the powers of such a com-mittee in the statute of this state. Presumptively, the powers of such a committee are the same in nature and quality as those of other executive and legislative tribunals, none of which are precluded, ordinarily, from rescinding their actions before rights have bested under them, or altering positions taken by them. A governor may revoke his proclamation calling a session of the legislature. *Tennant* v. *Parker,* 3 Neb. 409. A political committee may rescind its action as to matters not consum-mated. *Twombley* v. *Smith,* 25 Colo. 425; 15 Cyc. 329.

Ineligibility of Cooksey and Peters being assumed for the present, upon the inquiry as to the validity of the proceedings of February 28th and April 10th, the effect of their action with other members of the committee must be determined. That body consisted of twelve members. Before the roll call at the meeting of February 28th, chairman Hatfield, who was not a member of the committee, ruled that Cooksey and Peters could not act on account of their alleged disqualification, wherefore there was not a quorum present, and then left the room. Seven members including Cooksey and Peters, if countable, remained. Thereupon they designated N. H. Franklin to act as chairman pro. tem. Peters then resigned and T. T. Smith was elected to fill the vacancy so caused. The secretary being absent and rep-resented not to have attended a meeting for two years, his office was declared vacant and T. Edward Hill elected to fill the va-cancy. A list of persons designated for appointment as regis-trars was prepared and a resolution adopted requesting the committeemen of the several districts to prepare lists of per-

sons to be designated at a meeting to be held April 10th, for appointment as commissioners and clerks to represent the party in the primary election.

Though all of the members were duly notified of the meeting of April 10th, only seven attended, those who participated in the meeting of February 28th, except Peters. In his place and stead, Smith came and participated. At that meeting, all of the proceedings of the meeting of February 28th were formally ratified, and then the list of election officers presented to the court by Franklin was prepared.

If Cooksey and Peters had become ineligible and their ineligibility *ipso facto* terminated their offices, they were nevertheless *de facto* officers. Denying such termination, they were in fact still claiming and holding their positions and exercising the powers thereof. They had been admittedly elected and clothed with official power and authority which they were still exercising, notwithstanding the existence of good ground for ouster by proper authority. The power of ouster had not been exercised by those in whom such power was probably vested, the other members of the committee. . On the contrary, a majority of the other members recognized them and permitted them to participate. There is a suggestion that notoriety of their disqualification and of their conduct affording evidence of it, deprived them of the status of *de facto* officers, and, in this connection, *State* v. *Mayor, etc. of Jersey City,* 44 Atl. 709, is relied upon; but it manifestly does not support the proposition. None of the conditions suggested there, as being sufficient to preclude the status, exist here. Nobody had been appointed to their offices, as for the filling of vacancies therein. They had not resigned. Their offices had not been abolished. Recognition had not been refused. No court or other tribunal had adjudicated termination of their positions. By all authority, they were *de facto* members.

After the resignation of Peters at the meeting of February 28th, and before any business was transacted, there may not have been a quorum. Lack thereof under the circumstances is not affirmed by *City of Benwood* v. *Wheeling Railway Co.,* 53 W. Va. 465. In that case, there was actual fraud. The ousted member came in at the meeting hour and demanded his seat in

the council.   Here nothing of that kind is involved.   No member of the committee was deprived of participation in its deliberations.   On the contrary, all were invited to come in.   It is unnecessary to inquire whether or not there was a quorum at that meeting after Peters resigned.   The members present decided that there was and their decision and subsequent action in the election of Smith to fill the vacancy, clothed him with color of legality of appointment.   Under that color, he claimed the office and entered upon the discharge of its duties.   In doing so, he was not a bald usurper of the position, having no basis for a *bona fide* claim of title to it.   If there was no quorum when he claims to have been elected, what took place might not sustain his pretensions, in a direct proceeding to oust him, or in an effort to participate against the will of a majority of the committee, but it suffices when only the validity of his acts are relied upon by the public or a third party.   *Overall* v. *Madisonville,* (Ky.) 102 S. W. 278; *Dingwall* v. *Detroit,* 82 Mich. 568; *Lacasse* v. *Roy,* 8 Que. R. (S. C.) 293.   A valid election or appointment in the beginning is not a *sine qua non* to the status of a *de facto* officer.   A colorable election or appointment suffices.   Constantineau, De Facto Doctrine, §§ 182-191, inclusive, citing many authorities fully sustaining the text.

In view of the settled and fixed legal propositions above referred to, it is impossible to say the proceedings of the meeting of April 10th, in which Smith and Cooksey participated, were not valid as to the public and third parties, nor that they did not effect a revocation or rescission of any inconsistent valid action that may have been taken at the meeting of January 31st. At the meeting of April 10th, a list of names was prepared by the committee itself for presentation to the County Court, different from that prepared by Chairman Hatfield.   Being later in date, this action impliedly revoked any authority that may have been conferred upon him to prepare and present the list.

Under the construction given to the statute by my associates, the county court was bound to recognize the list relied upon by the relators and appoint the persons therein named; and the writ prayed for will be awarded, requiring them to make such appointments which will impliedly annul the appointments made from the Hatfield list.

On the fair and reasonable presumption that this power of designation was vested in political committees for the benefit of the parties they represent and not for abuse by a temporarily dominant faction of the party as represented by a bare majority of the committee, I would limit the writ to requirement of the appointment of one-half of the officers the party is entitled to designate. As to the rights of minorities in such designation, the statute is silent. It is very general in its terms and assumes the existence of normal conditions and fairness on the part of the committee. It cannot reasonably be assumed that the Legislature intended this wholesome power should be so used by a faction or dominant element as to afford it an opportunity to rob the competing element. In my opinion, the condition revealed here affords ample ground for an implied exception from the operation of the statute accordant with its literal terms, and qualifies its operation and consequently the duty of the county court. The court may judicially note that the primary election system has for one of its main purposes destruction of the abominable and ruinous practice of committee rule, stifling and defeating a fair expression of the will of the party. The Legislature having dealt specifically with the abuse of power attempted by both of the factions in McDowell County, and having dealt generally with the subject of representation in both the primary election law and the general election law, and it being impossible reasonably to assume legislative intention to permit such an abuse, that body may well be deemed impliedly to have intended a fair and reasonable disposition of such a situation as is presented here, by the county courts. *Coal & Coke Ry. Co.* v. *Conley and Avis,* 67 W. Va. 129.

In view of the rejection of this suggestion by my associates, I deem it unnecessary to elaborate upon the reasons and legal principles applicable to it and involved in it, define the extent to which it can safely and consistently be carried, or indicate the methods of its execution. An easy and fair method of execution of the plan suggested was found and adopted in the unreported case of *Payne* v. *County Court,* decided June 1, 1916.

Writ awarded.

*Peremtory writ of mandamus awarded.*