ATTORNEY GENERAL *vs.* JOHN DROHAN & others.

Suffolk. September 7, 1897. — November 24, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & BARKER, JJ.

*Quo Warranto — Title to Membership in Political Committee — Amendment — Change of Parties — Statute — Ballot Commissioners of Boston.*

Membership in a political committee belonging to a political party is not a public office, and an information in the nature of a *quo warranto* will not lie to try the title.

Relators, whose rights could not be determined by an information in the nature of a *quo warranto*, having filed a motion to amend the information by striking out the name of the Attorney General and inserting their own names, so that they might be the sole parties plaintiff, the court, assuming that such an amendment would be allowed, with other amendments, if any, that might be necessary, proceeded to consider the questions which thus would be presented, speaking of the relators thenceforward as the plaintiffs.

By St. 1896, c. 435, § 4, which gives the election commissioners of Boston authority to recount the ballots cast at a caucus, it is intended that, in case of the disputed election at a ward caucus of a member of a political committee, the action of the commissioners on a petition for a recount shall settle the question as to who is elected.

INFORMATION, in the nature of a *quo warranto*, filed July 13, 1897, by the Attorney General, to try the title to membership in the Democratic City Committee of the city of Boston. Hearing before *Lathrop*, J., who reserved the case upon the information, answer, and an agreed statement of facts, for the

consideration of the full court. The facts appear in the opinion.

*J. B. Goodrich,* (*T. J. Kenny* with him,) for the plaintiff.

*J. A. Dennison,* for the defendants.

MORTON, J. The first question is whether the relators, as members of the Democratic City Committee of Boston, hold public offices. If they do not, this information cannot be maintained, since the Attorney General can intervene in matters of this nature only so far as they relate to public offices. For any interference with their private rights, the remedy of the relators is by proceedings in their own names against the parties in possession of the offices to which they claim to have been elected. *Commonwealth* v. *Dearborn,* 15 Mass. 125. *Kenney* v. *Consumers' Gas Co.* 142 Mass. 417. *Attorney General* v. *Sullivan,* 163 Mass. 446, 448. *Attorney General* v. *Clark,* 167 Mass. 201. *Attorney General* v. *Adonai Shomo Corporation,* 167 Mass. 424.

Except for the fact that several acts have been passed by the Legislature which relate, amongst other things, to political committees, no one would contend, we presume, that the members of a political committee belonging to one of the political parties hold public office by reason of their being members of such committee. We do not think that the effect of these statutes has been or is to make that a public office which was not one before their enactment. Without attempting an exhaustive definition of what constitutes a public office, we think that it is one whose duties are in their nature public, that is, involving in their performance the exercise of some portion of the sovereign power, whether great or small, and in whose proper performance all citizens, irrespective of party, are interested, either as members of the entire body politic, or of some duly established division of it. *Brown* v. *Russell,* 166 Mass. 14. *United States* v. *Hartwell,* 6 Wall. 385. *People* v. *Nostrand,* 46 N. Y. 375. *People* v. *Brooklyn,* 77 N. Y. 503. *Opinion of the Justices,* 3 Greenl. 481.

A distinction has been taken between public office and public employment to which it is not necessary now to do more than to refer. *Brown* v. *Russell, ubi supra.* Manifestly, membership in a political committee belonging to one party or another does not come within the above description of what constitutes public

office.   The fact that the Legislature has deemed it expedient to regulate by státute the election and conduct of political committees does not make the office a public one.   The members of them continue to be, as before, the officers of the party which elects them, and their duties are confined to matters pertaining to the party to which they belong, and which alone is interested in their proper performance.

Neither is it necessary, in order to protect the rights of members of political committees, that the office should be regarded as a public one.   As already observed, that may be done by proceedings instituted in their own names by those whose rights have been interfered with, and this court and the Superior Court are expressly given full powers at law and in equity to enforce the provisions of the statutes relating to political committees and caucuses.

We think, therefore, that the rights of the relators cannot be determined in this form of proceeding.   The relators have, however, filed a motion to amend the information by striking out the name of the Attorney General and inserting their own names, so that they may be the sole parties plaintiff; and assuming that such an amendment will be allowed, with other amendments, if any, that may be necessary, we proceed to consider the questions which thus will be presented, speaking of the relators henceforward as the plaintiffs.

The defendants and the plaintiffs both claim to have been elected at the same caucus.   No question arises concerning the regularity of the proceedings relating to the calling of it, or to its organization.   It appears from the agreed facts, that at the caucus the plaintiffs " were declared elected members of the Democratic Committee of Ward 16, and within three days thereafter were each presented a certificate of election to said Democratic Committee of Ward 16 by the warden and clerk of said caucus."   By statute, the members of the several ward committees of a political party in a city constitute a committee called a city committee.   St. 1895, c. 489, § 4.   By their election, therefore, as members of the Democratic Committee of Ward 16, the plaintiffs became members of the Democratic City Committee of Boston.   The day following the caucus, ten legal voters of the ward petitioned the election commissioners of Boston, as they

had the right to do, (St. 1896, c. 435, § 4, and St. 1895, c. 507, § 23,) for a recount, alleging that another ticket had received more votes than that which bore the names of the plaintiffs. Thereupon the commissioners recounted the ballots, " and determined the questions raised in said petition, and reported to the president of the Democratic City Committee that by their recount of said ballots no material change appeared from the count as declared by the said warden and clerk of said caucus." At this recount, parties representing the respective tickets on which were the names of the plaintiffs and defendants were present, as it is provided by statute that they could be, and "addressed the commission on the subject matter of the aforesaid petition." Shortly afterwards, at a meeting of the Democratic City Committee, duly called and assembled, the plaintiffs appeared and participated in the temporary organization of the committee, and the defendants then objected to the admission of the plaintiffs as members of the committee for the reasons set forth in a communication filed with the secretary of the committee. Thereupon the committee voted to give each side an opportunity to present its case, and at the conclusion of the hearing, against the protest of the plaintiffs, seated the defendants as members of the committee. Pursuant to and following this action of the committee, its secretaries filed with the Secretary of the Commonwealth, and with the board of election commissioners of the city of Boston, and with the secretary of the State committee of the political party of which they were a portion, a list of the members of the Democratic City Committee of Boston for the year beginning June 1, 1897, which included the names of the defendants, instead of including, as the plaintiffs contend it should have, their names. No objection existed to the eligibility of the plaintiffs up to the time of the caucus, and of the meeting of the city committee, so far as their right to participate in the caucus or be elected to the committee was concerned.

The statute which gives the election commissioners of Boston authority to recount the ballots cast at a caucus provides that they shall "recount said ballots and determine the questions raised; and such recount shall stand as the true result of the vote cast in such caucus." St. 1896, c. 435, § 4.

The question is, What is meant by "the true result"? The defendants contend that the commissioners are to determine only who received the most ballots, and that the committee is the final judge of its own membership. We think that this is not the true construction. The words "shall stand as the true result" import not only a correct count, but something more, — an element of finality.

A representative body made up of members chosen by or selected from a constituency which they represent is usually either expressly or from the nature of the case the judge of its own membership. But it was competent for the Legislature to provide, as we think it has done in effect, that, in case of the disputed election at a ward caucus in Boston of a member of a political committee, the action of the election commissioners on a petition for a recount should settle the question as to who was elected. This construction is supported, we think, by other instances, in which like language has been or is used with the intention, it would seem, that the recount should be final. Thus it was provided by St. 1893, c. 417, § 210, that the recount by the board of aldermen of a city, or of a committee thereof, of the ballots cast upon the question of granting licenses for the sale of intoxicating liquors, "shall stand as the true result of the vote cast in such city upon the said question." This section was repealed by St. 1895, c. 299, § 8, and § 1 of the last named act was substituted for it, and contains the same language. When this language is compared with that describing the effect of action under St. 1893, c. 417, § 207, we think that it is still more apparent that the recount by the election commissioners was intended in a case like the present to be final. The same language which we have been considering is used in St. 1897, c. 530, § 12, which was enacted after the election in question, and which is a repeal of and substitute for St. 1896, c. 435, § 4. This statute expressly gives to the election commissioners the power to decide upon challenged votes, and thus removes any doubt, we think, respecting the finality of the recount, and shows that the meaning which we have given to the language under consideration is the correct one, since it hardly is to be supposed that the Legislature could have intended to use the same words in different senses in the two statutes.

It is true that there is no way provided for notifying the result to the city committee, but all parties interested are bound to take notice of it.

The fact that the election commissioners are required to retain for three months all ballots cast at a caucus, and to "produce the same if called for by any court, justice, tribunal, or convention having jurisdiction of the same," (St. 1895, c. 507, § 22,) does not control, we think, the express language of the statute in regard to the effect to be given to a recount. If no recount should be asked for, then it would be necessary that the question who was elected should be determined, in case of a dispute, in some other manner; and, with that contingency in view, the Legislature well may have directed that the ballots should be retained, and should be produced before the convention, tribunal, justice, or court with which the decision would rest.

It follows, therefore, that in the contingency which has arisen the rule under which the city committee purported to act in seating the defendants did not justify their action, and that the plaintiffs are entitled to the offices to which they claim to have been elected.

> *Information in its present form to be dismissed, unless an amendment is allowed substituting the relators as plaintiffs, when a decree may be entered for the plaintiffs.*