

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN 11, TEXAS

GERALD C. MANN
XXXXXXXXXXXXXX
ATTORNEY GENERAL

Honorable Ernest Guinn
County Attorney
El Paso County
El Paso, Texas

Dear Sir:

Opinion No. O-4425

Re: Does the action of the Com-
missioners' Court in changing
the boundaries and/or the
numbers of the election pre-
cincts within the county in
accordance with the law (Arti-
cle 2933, R.C.S.) create a
vacancy in the office of party
precinct committeemen who
have been duly elected as the
law directs (Article 3118, R.C.S.)
when such precinct committee-
men have not moved their resi-
dence? Would a vacancy exist
if the Commissioners' Court's
action resulted in the placing of
two such duly elected precinct
committeemen in the same new
election precinct who, nevertheless,
have not changed their residences?

Your letter of February 12, 1942, requesting the opinion of this depart-
ment upon the above questions, omitting the formal parts, is set out below:

"The Commissioners' Court, in accordance with Article 2933
of the Revised Civil Statutes, changed the boundaries of many of
its election precincts. As a result thereof, there are a number of
precinct committee-men, elected under the terms of Article 3118,
who fall within the boundaries of newly numbered election precincts.
For example, the committee-man elected for election precinct No.
15 now resides in election precinct No. 12 with somewhat changed
boundaries. He has not, of course, changed his residence, the change

being entirely caused by the action of the Commissioners' Court under Article 2933.

"Is the committee-man in question entitled to represent Precinct No. 12 as the executive committee-man, or is there a vacancy existing which necessitates the appointment of a new committee-man, in accordance with Article 3118? The committee-man, of course, elected for old election Precinct No. 12 now falls within an entirely different precinct.

"In the event that you hold that the man elected as pre-cinct committee-man may continue to act as such for the precinct in which his residence falls under the new boundaries, what action should be taken in case the reformation of the precinct boundaries and the re-numbering of the precincts results in two committee-men, whose residences have not been changed, falling within the same election precinct?

"It is my opinion that the proper construction of the two Articles in question, to-wit: Article 3118 and Article 2933, results in the conclusion that a change in the election precincts necessitates the appointment of new members for each of the changed precincts.

"In a number of cases, the election precincts were changed in number only and not in boundaries, would this make a difference?

"It is my opinion that a change in the numbers of the pre-cincts would not necessitate a new appointment, but that the commit-tee-man elected for such precinct would continue to serve."

The answer to your questions necessarily involves an analysis and construction of the two statutes cited in your letter. For your easy reference in connection with the discussion that follows they are here set down in full:

"Art. 2933. Each commissioners court may, if they deem it proper, at each August term of the court, divide their respective counties, and counties attached thereto for judicial purposes, into convenient election precincts, each of which shall be differently numbered and described by natural or artificial boundaries or sur-vey lines by an order to be entered upon the minutes of the court. They shall immediately thereafter publish such order in some news-paper in the county for three consecutive weeks. If there be no news-paper in the county, then such copy of such order shall be posted in

some public place in each precinct in the county.  No election precinct shall be formed out of two or more justice precincts, nor out of the parts of two or more justice precincts.  The commissioners court shall cause to be made out and delivered to the county tax collector, before the first day of each September a certified copy of such last order for the year following."

"Art. 3118.  There shall be for each political party required by this law to hold primary elections for nominations of its candidates, a county executive committee, to be composed of a county chairman, and one member for each election precinct in such county;  the committeeman from such election precinct shall be chairman of his election precinct, and the said county chairman shall be elected on the general primary election day;  the county chairman by the qualified voters of the whole county, and the precinct chairman by the qualified voters of their respective election precincts.  Said county and precinct chairman shall assume the duties of their respective offices on Saturday following the run-off primary immediately after the committee has declared the results of the primary election.  Said county chairman shall be ex-officio a member of the executive committee of all districts of which his county is a part, and the district committee thus formed shall elect its own chairman.  Any vacancy in the office of chairman, county or precinct, or any member of such committee shall be filled by a majority vote of said executive committee.  The list of election precinct chairman and the county chairmen so elected, shall be certified by the county convention to the county clerk, along with the other nominees of said party.  If there are no requests filed for candidates for county and precinct chairman, a blank space shall be left on the ticket beneath the designation of such position."

The questions propounded by you present an interesting situation and one which so far as our search reveals has not been directly passed upon by any opinions of this department previously rendered.  We think that your request of this department might be fairly considered from either one of two viewpoints.  The first is that under the broad powers conferred by the Constitution upon political parties, or reserved by that instrument to the people and the organizations through which they choose to express their political will (Constitution of Texas, Article I, Sections 2, 27 and 29), the question of whether or not vacancies exist under the circumstances described by you is a question of fact to be considered and decided by the party executive committee of the county in the light of all the facts relating to the subject.  The Attorney General's Department is not required and could not reasonably be expected to pass upon questions of fact and as a matter of policy it does not attempt to do so for the understandable reason that all the facts which should be considered could not be known to this department, as

well as it could to the persons immediately involved and because they could not be presented here as fully as they could to a fact finding body such as a jury or court under proper rules of evidence.

The other viewpoint is that your questions involve matters of law which require an interpretation of the powers and duties of commissioners' courts and of the authority and privileges of political party organizations under our Constitution and our statutes as they relate to your particular problem. This is the view that we prefer to take, since we wish to be of whatever assistance we can to you, you are entitled to have the benefit of our interpretation of the law, and any doubts about the matter we think should be resolved in your favor.

We begin our discussion with the pertinent constitutional provisions, first as to the commissioners' court:

Article V, Section 18. Each organized county in the State now or hereafter existing, shall be divided from time to time, for the convenience of the people, into precincts, not less than four and not more than eight. The present County Courts shall make the first division. Subsequent divisions shall be made by the Commissioners' Court, provided for by this Constitution. In each such precinct there shall be elected at each biennial election, one justice of the peace and one constable, each of whom shall hold his office for two years and until his successor shall be elected and qualified; provided that in any precinct in which there may be a city of 8000 or more inhabitants, there shall be elected two justices of the peace. Each county shall in like manner be divided into four commissioner's precincts in each of which there shall be elected by the qualified voters thereof one county commissioner, who shall hold this office for two years and until his successor shall be elected and qualified. The county commissioners so chosen, with the county judge, as presiding officer, shall compose the County Commissioners Court, which shall exercise such powers and jurisdiction over all county business, as is conferred by this Constitution and the laws of the State, or as may be hereafter prescribed." (Underscoring ours)

The above Article describes the general powers of the commissioners' court, and taken together with Article 2933, supra, describes the particular powers of such commissioners' court as they relate to your questions. As may later appear in detail herein, the powers of the commissioners' court are clearly shown to be limited powers.

Next we take up the provisions of our Constitution which the courts have held are to be applied to political party organization. These provisions are found in the Bill of Rights as follows:

"ARTICLE I, SECTION 2. All political power is inherent in the people, and all free governments are founded on their authority, and instituted for their benefit. The faith of the people of Texas stands pledged to the preservation of a republican form of government, and, subject to this limitation only, they have at all times the inalienable right to alter, reform or abolish their government in such manner as they may think expedient."

"ARTICLE I, SECTION 27. The citizens shall have the right, in a peaceable manner, to assemble together for their common good; and apply to those invested with the powers of government for redress of grievances or other purposes, by petition, address or remonstrance."

"ARTICLE I, SECTION 29. To guard against transgressions of the high powers herein delegated, we declare that everything in this 'Bill of Rights' is excepted out of the general powers of government, and shall forever remain inviolate, and all laws contrary thereto, or to the following provisions, shall be void."

As you see, the powers and privileges here conferred, reserved, or safeguarded are not limited and the Constitution expressly forbids the restriction of such powers or any interference with the lawful and peaceful exercise thereof. The courts of Texas have with uniformity applied these constitutional provisions to political party organizations and have held, as will more fully appear hereafter, that not even the Legislature has the right to interfere with the broad powers thus conferred upon them, though the Legislature may provide for the manner in which party nominees shall be elected, regulate the manner in which they shall hold a primary and pass such directory legislation regarding the organization of their committees as that contained in Article 3118, supra.

We pass now to a review of some of the reported court opinions bearing upon these Articles of the Constitution and the statutes. The courts of this State have confirmed the power of the commissioners' court to divide their respective counties and the counties

attached thereto for judicial purposes into election precincts, pro-
vided that in so doing they follow the directions of the statute (Arti-
cle 2933, R.C.S.). But these opinions hold that the commissioners'
courts are strictly limited by such statute and must keep their ac-
tion in this respect within the meaning, purpose and intent of the
statutes. See Dubose v. Wood, Civ. App., 162 S. W. 3; Williams v.
Woods, Civ. App., 162 S. W. 1031; Hogg v. Campbell (Civ. App.),
48 S. W. (2d) 515.

Having satisfied ourselves that the commissioners' courts
may change the election precincts, we must now ascertain whether
such court in the exercise of this power may remove a political party
precinct chairman by altering the numbers or the boundaries of his
precinct, thus "moving his precinct out from under him" so to speak.

In Bell, et al. v. Hill, County Clerk, et al., 74 S. W. (2d)
113, the Supreme Court of Texas, speaking through the late Chief
Justice Cureton, in a scholarly opinion in which he quotes extensively
from De Tocqueville's "Democracy in America" and from Story on
the Constitution, Vol. 2, Sections 1893 and 1894, lays down the follow-
ing rule:

1. "Right to organize and maintain a political party
is guaranteed by Bill of Rights and legislative power re-
specting political parties is limited to legislation secur-
ing public peace and good order and to making effective
the right of assembly, petition, etc., as guaranteed by
Bill of Rights. (Const. Art. I, Sections 2, 27, 29)."

2. "Every privilege essential or reasonably appro-
priate to exercise of right to organize and maintain a
political party is guaranteed under Bill of Rights includ-
ing privilege of determining policies of party and its mem-
bership (Const. Art. I, Sections 2, 27, 29)."

We quote a few sentences from this opinion in the language of
Justice Cureton:

"Since the right to organize and maintain a political
party is one guaranteed by the Bill of Rights of this State,
it necessarily follows that every privilege essential or
reasonably appropriate to the exercise of that right is
likewise guaranteed, including, of course, the privilege of

determining the policies of the party and its membership.
Without the privilege of determining the power of a politi-
cal association and its membership, the right to organize
such an association would be a mere mockery. We think
these rights, that is, the right to determine the membership
of a political party and to determine its policies, of necess-
ity are to be exercised by the state convention of such party,
and cannot, under any circumstances, be conferred upon a
state or governmental agency."

In Grovey v. Townsend, 295 U. S. Rep., the Supreme Court
of the United States in an opinion written by Justice Roberts quotes fav-
orably from the Bell v. Hill case, supra, and gives the endorsement of
the highest court in our Nation to the principles there enunciated in the
following paragraph quoted from the opinion:

". . . The Supreme Court of the state has decided,
in a case definitely involving the point, that the legisla-
ture of Texas has not essayed to interfere, and indeed
may not interfere, with the constitutional liberty of citi-
zens to organize a party and to determine the qualifica-
tions of its members. If in the past the legislature has
attempted to infringe that right and such infringement has
not been gainsaid by the courts, the fact constitutes no
reason for our disregarding the considered decision of
the state's highest court. The legislative assembly of
the state, so far as we are advised, has never attempted
to prescribe or to limit the membership of a political
party, and it is now settled that it has no power so to do.
The state, as its highest tribunal holds, though it has
guaranteed the liberty to organize political parties, may
legislate for their governance when formed and for the
method whereby they may nominate candidates, but must
do so with full recognition of the right of the party to ex-
ist, to define its membership, and to adopt such policies
as to it shall seem wise. In the light of the principles so
announced, we are unable to characterize the managers of
the primary election as state officers in such sense that
any action taken by them in obedience to the mandate of
the state convention respecting eligibility to participate
in the organization's deliberations, is state action."

Corpus Juris Secundum in Vol. 29, page 117, Section 86, citing opinions from states other than Texas, some of which will be more fully examined hereinafter, goes even more directly to the point here under consideration as follows:

"Mere boundary changes, subsequent to election, which place the residence of committeemen in a township or ward different from that which they were elected do not effect the term of the incumbent. In the absence of statutory provisions specifying the length of a term of a party committee, or governing committee rules to the contrary, the presumption is that the members of such committee are to continue to serve from their election until the next primary election, unless they resign, die or are removed for cause."

We believe that no further authority is necessary in order to answer your questions but there are decisions of other jurisdiction which go more nearly to the heart of your problem and because of their persuasive force, and perhaps clarifying effect, we advert briefly to two of them.

In In Re Prospect Park Borough Election Dists., 146 Atl. 28, the Supreme Court of Pennsylvania held that decree of Court of Quarter Sessions, in the exercise of its power under Const. Art. 8, Section 11, to divide Boroughs into election districts, that the two existing districts of a borough be divided into five in a specified manner, did not operate to abolish the old district with the effect of terminating the tenure of one previously elected to the constitutional office of minority inspector of one of the two original districts.

In Williamson, et al v. Killough, Judge, 46 S. W. (2d) 24, the Supreme Court of Arkansas speaks as follows:

"While the members of the committee are elected in the township or city ward in which they reside, they become, upon their election members of the county committee, and the authorities appear to be unanimous, that after such election, the right to discharge the functions of a committeeman is not affected by a subsequent change of boundary lines which would place the residence of the committeemen in another township or ward, and this change of lines does not automatically or otherwise affect the incumbent, but the committeeman, if

he remains otherwise eligible, continues as such until his suc-
cessor is elected pursuant to the provisions of the law regulat-
ing the election."

In this same case the Arkansas Supreme Court quotes from
an opinion of the Supreme Court of Minnesota speaking through Mr. Jus-
tice Mitchell as follows:

"In our opinion an order redistricting a county is merely
prospective in its operation as to the election and qualifications
of members of the board of commissioners, and in no way af-
fects the right to the office of those previously elected. There
is nothing in the language of the statutes to indicate that a redis-
tricting is intended to have any retrospective operation." Norwood
v. Holden, 45 Minn. 313, 47 N. W. 971, 972.

The Arkansas Court then refers to the case of Olsen v. Merrill,
5 P. (2d) 226, where after an extensive review of the authorities it was held
by the Supreme Court of Utah that members of the Board of Education of
cities of the second class are entitled to serve as members of the board for
the remainder of their terms notwithstanding an ordinance redistricting the
city placed them outside the boundaries of the municipal ward for which they
were elected. The Arkansas Court then cites a long line of authorities and
appends this comment:

"It is true these are cases where officers were removed
by changes in lines from the wards or district or township in
which they were elected, whereas in the instant case the com-
mitteemen are not officers, but that fact does not affect the
legal principles which control. The controlling legal principle
is that the committeemen were elected at an election made
legal by the primary election law, and for a definite time, not
yet expired, and it is true also that upon their election they
became county committeemen, although elected by townships
or wards. Their functions are not confined to the township or
ward in which they reside, but they, in conjunction with other
committeemen similarly elected, are committeemen for the
county, and changes in the lines of their townships or wards
do not affect their eligibility, for the reason that such changes
are prospective in their nature so far as the incumbents af-
fected are concerned. We find no divisions in the authorities
on this subject."

Therefore you are respectfully advised that it is the considered opinion of this department that the commissioners' court by redistricting the election precincts of your county did not cause or create vacancies in the offices of political party precinct committeemen even though such redistricting changed the numbers and the boundaries of some of the old precincts so that the residences of some of the committeemen are now in differently numbered or differently bounded precincts. Our opinion is still the same even though two precinct chairmen of old precincts now find their residences within the boundaries or numbers of the same precinct. We think these committeemen unless otherwise disqualified would be entitled to retain their county executive committee membership until the next general primary election, at which time precinct committeemen should be elected in the manner and from the precincts provided by the statutes (Art. 3118, R.C.S.).

Very truly yours

ATTORNEY GENERAL OF TEXAS

By (S) ROBT. F. CHERRY

Robert F. Cherry
Assistant

APPROVED APR 8, 1942

GROVER SELLERS

FIRST ASSISTANT
ATTORNEY GENERAL

RFC:LM

APPROVED
Opinion Committee
By  B. W. B.
Chairman