ANNA B. NOONAN, Appellant, v. JENNIE S. WALSH, Respondent, No. 44105—273 S. W. (2d) 195.

Division Two, December 13, 1954.

*Louis B. Sher* and *Donald J. Sher* for appellant.

*Jesse E. Bishop* and *Michael J. Aubuchon* for respondent.

1170

BARRETT, C.—On the face of the returns at the August 1952 primary, Jennie S. Walsh was elected to the four year term (V.A.M.S., Sec. 120.790) of Democratic committeewoman from the [196] seventeenth ward of the City of St. Louis, by a vote of 2428 to 2193. Her opponent in the election, Anna B. Noonan, instituted this proceeding in the Circuit Court of the City of St. Louis to contest Mrs. Walsh's election. Upon motion the trial court dismissed the proceeding with prejudice, and Mrs. Noonan has perfected her appeal to this court. V.A.M.S., Sec. 124.380.

A committeewoman is elected under the statutes enacted by the General Assembly and is charged with the duty of performing certain functions of government (State ex rel. Ponath v. Hamilton, (Mo.) 240 S. W. 445), and is, therefore, a "public officer." State ex rel. Kaysing v. Ryan, 334 Mo. 743, 67 S. W. (2) 983; State ex rel. Dawson v. Falkenhainer, 321 Mo. 1042, 15 S. W. (2) 342. And, since an election contest involves "the title to any office under this state" (Const. Mo., Art. 5, Sec. 3), appellate jurisdiction of the appeal is appropriately in this court. State ex inf. Barrett v. Parrish, 307 Mo. 455, 270 S. W. 688; State ex rel. Davidson v. Caldwell, 310 Mo. 397, 276 S. W. 631; Armantrout v. Bohon, (Mo. App.) 157 S. W. (2) 530.

While the election was at a primary, the parties agree that the laws relating to general election contests govern this appeal and the issue involved, rather than the laws relating to primary election contests. State ex rel. Reardon v. Hartmann, 331 Mo. 771, 55 S. W. (2) 270. Furthermore, the parties agree that the appeal involves but a single issue and that is whether Mrs. Noonan's notice to contest the election was timely filed, if not the trial court properly sustained the motion to dismiss for lack of jurisdiction. Castello v. St. Louis Circuit Court, 28 Mo. 259; Bowen v. Hixon, 45 Mo. 340; State ex rel. Kaysing v. Ryan, supra; State ex rel. Addison v. Bowron, 335 Mo. 1052, 75 S. W. (2) 850; 29 C.J.S., Sec. 259, p. 370; 18 Am. Jur., Sec. 290, p. 368.

The single issue for decision results from this sequence of events: The election was held and the judges and clerks of election,

counted the ballots and forwarded their tabulations to the Board of Election Commissioners of the City of St. Louis on August 5th. The Board of Election Commissioners met on the 14th day of August and certified the results of the election. The Circuit Clerk received the certified abstract of the votes on the 15th and on August 25th eleven of the circuit judges "sitting in general term," upon motion, ordered the abstract of votes filed and made a part of the court's record. On September 15th Mrs. Noonan instituted this proceeding by filing and causing to be served upon Mrs. Walsh her notice of intention to contest the election.

Since the notice of contest was not served within twenty days after the Board of Election Commissioners certified the results of the election on August 14th, Mrs. Walsh contends that the notice was not timely. Because the notice was served within twenty days after the certified abstract had been ordered filed by the Circuit Court on August 25th, thereby enabling the Clerk of the Circuit Court to issue a certificate of election, Mrs. Noonan contends that the notice was timely. The statutes governing general election contests provide, in part, that, "The several circuit courts shall have jurisdiction in cases of contested elections for county, municipal and township offices * * * *but no election of* * * * *any county, municipal or township officers shall be contested unless notice of such contest is given to the opposite party within twenty days after the votes have been offically counted.*" V.A.M.S., Sec. 124.250. It is urged by the appellant that the key words are "officially counted" and that as applied to this election the votes had not been "officially counted" until the entire ministerial process had been completed, which was August 25th when the Circuit Court ordered the abstract of votes filed, thereby authorizing the Circuit Clerk to issue a certificate of election. To substantiate her interpretation of the meaning of the statute, the appellant points to the fact that the words have been in our election contest statutes since 1845; "No election of any county officer shall be contested, unless legal notice of such contest be given in ▮▮▮▮ writing to the opposite party, within twenty days after the votes shall be officially counted." Mo. R. S. 1845, Ch. 56, Sec. 53. It is urged that in those days the judges and clerks of election reported the returns to the county clerk after which the clerk was obliged to "examine and cast up the votes given to each candidate, and give to those having the highest number of votes, a certificate of election." Mo. R. S. 1845, Secs. 20-21. It is pointed out that the key words have not been deleted from the election contest statutes and that even now the judges and clerks of election transmit their returns to the county clerk who examines and casts up the votes and issues an election certificate. V.A.M.S., Secs. 111.690, 111.710. In this situation it is urged that the twenty days within which the notice of contest must be given would not start to run until the county clerk had performed all his duties,

down to the point of determining who had received the most votes so that the individual could demand and get a certificate of election. As to St. Louis it is urged that the duties historically performed by county clerks under the general election laws have been divided by the General Assembly between three officers, a Board of Election Commissioners, the Circuit Court of the City of St. Louis, and the Clerk of the Circuit Court. And that, by analogy, under this division the Board of Election Commissioners examines the votes, tabulates them and certifies its conclusions to the Circuit Court, the Circuit Court "meets and orders the abstract entered of record" and finally the clerk issues a certificate of election "to each person having the highest number of votes, as declared by the order of the circuit court." V.A.M.S., Sec. 118.610. Therefore, it is contended that the votes were not "officially counted" until August 25th and that the notice of contest, given within twenty days of that date on September 15th, was within the time required by the statute.

It is not essential to a determination of this appeal to consider the meaning of the statutes of 1845, neither is it necessary or desirable to attempt an interpretation of the present statutes relating to election contests in general. Whatever the functions historically or presently performed by county clerks, their duties and functions have been transferred to the Board of Election Commissioners in St. Louis. "The powers and duties herein given to and imposed upon the clerks of the county courts of the several counties shall be exercised in reference to the city of St. Louis and to Kansas City * * * by the board of election commissioners of such city." V.A.M.S., Sec. 111.030. An entire chapter of the statutes, Chapter 118, Sections 118.010 to 118.790, is devoted to the subject of registration of voters and the conduct of elections in cities of over 600,000 inhabitants. A board of election commissioners is established (V.A.M.S., Sec. 118.040) and its functions and duties, before, during, and after the election, are set forth in elaborate detail. Under those statutes the judges and clerks of the election canvass the vote, make duplicate statements of the result of the canvass, "proclaim in a loud voice the total number of votes received by the persons voted for," separate the ballots, thread them upon a wire or string and "seal the knot in such a manner that it cannot be untied without breaking the seal." The ballots are placed in sealed envelopes and delivered to the Board of Election Commissioners. V.A.M.S., Secs. 118.530-118.560. As to the functions and duties of the Board of Election Commissioners the statutes provide that "Within eight days after the close of such election, *the board, which is hereby declared the canvassing body of such city,* shall publicly open all the returns * * * *and shall make the official tabulation of statements of the votes cast* by precincts in the following manner * * *. *The certificate of returns issued by the said election commissioners on their canvass shall be taken and accepted as the of-*

*ficial certificate of such returns.''* V.A.M.S., Sec. 118.590. As to the Board of Election Commissioners the statutes continue, *''It shall be the duty of such canvassing body to canvass, add up and declare the result of every election hereafter held within the boundaries of such city and certify the same to the circuit court.* The court shall thereupon enter of record such abstracts and results, and a certified copy of such record shall thereupon be filed with the clerk of the circuit court. Such abstract or result shall be treated by the clerk, in all respects, as the official certificate of the returns, and he shall transmit the same to the secretary of state, or other proper officer, as required by law. Such abstract or results so entered and declared by such court * * * shall be treated everywhere within the state, and by all public officers, with the same binding force and effect as the abstract of votes now authorized by the general laws of the state.'' V.A.M.S., Sec. 118.600.

While not determinative it is notable that all properly conducted election contests, including those for committeeman, either under the primary or general election laws, have been instituted within twenty days after the Board of Election Commissioners, or other body charged with the duty, has declared and certified the result of the canvass of the votes. State ex rel. Reardon v. Hartmann, supra; State ex rel. Addison v. Bowron, supra; State' ex rel. Jenkins v. Bowron, (Mo.) 75 S. W. (2) 853. In some respects the duties of the board, as well as the duties of the circuit court in general term, may be ministerial (State ex rel. Donnell v. Osburn, 347 Mo. 469, 147 S. W. (2) 1065), including the issuance of a certificate of election (which, incidentally, in this instance was issued and delivered during the trial of this case on November 14, 1952), but the significant thing is the force and effect of their acts. The phrase ''officially counted,'' despite its one hundred years in the statutes, has not become a term of art, and it is not essential to a determination of this appeal to attempt a precisely definitive definition of the words or to give them a specific technical significance in the laws relating to election contests. It is sufficient to say, considering all the statutes, that the board is declared ''the canvassing body'' and ''make the official tabulation of * * * the votes cast,'' and their certificate of returns ''shall be taken and accepted as the official certificate of such returns.'' It is the duty of the board to canvass, add up ''and declare the result of every election hereafter held within the boundaries of such city.'' In short, the result of the election was determined and declared, (Bowen v. Hixon, 45 Mo. 340, 343-344; 29 C.J.S., Sec. 222, p. 325; 18 Am. Jur., Sec. 290, p. 368) including the official count of the votes, by the Board of Election Commissioners on August 14th and for the purpose of contesting the election of committeewoman the notice of contest should have been filed within twenty days of the officially declared result. Accordingly

the judgment of the circuit court dismissing the proceeding is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. *Leedy,* Acting P. J., *Ellison,* J., *Bennick* and *Broaddus,* Special Judges, concur.