STATE *ex rel.* EARL TOMBLIN, *et al.*

*v.*

W. E. BIVENS, *et al.*

(No. 12568)

Submitted April 19, 1966.          Decided July 15, 1966.

*Slaven & Staker, Zane Grey Staker, W. Graham Smith, Jr.,* for relators.

*Oval D. Damron, W. Bernard Smith,* for respondents.

HAYMOND, JUDGE:

In this original mandamus proceeding instituted in this Court on April 12, 1966, the petitioners, Earl Tomblin, Elizabeth Hager, Faye Ferrell, Myrtle Manco and Bobby Mitchell, members of the Logan County Democratic Executive Committee, and David W. Mullins, its Chairman, seek a writ to compel the defendants, W. E. Bivens and William C. Dingess, Commissioners of the County Court of Logan County, a corporation, and the County Court of Logan County, a corporation, to reconvene in special meeting and set aside its order of April 5, 1966, to the extent that it appointed a list of Democratic election officers to serve in

the place and stead of the Democratic election officers for which appointment was requested by the Logan County Democratic Executive Committee, and to enter an order appointing as Democratic election officers to serve in the Primary Election of May 10, 1966, the persons named and designated as precinct election officers in the list submitted to the county court by the Logan County Democratic Executive Committee. Upon the petition this Court issued a rule returnable April 19, 1966, at which time the defendants appeared and filed their answer and its exhibits, to which the petitioners filed their demurrer, and this proceeding was submitted for decision upon the petition and its exhibits, the answer and its exhibits, the demurrer to the answer, and the oral arguments and the written briefs in behalf of the respective parties.

On May 2, 1966, this Court sustained the demurrer of the petitioners to the answer of the defendants, held such answer to be insufficient in law, and awarded a writ of mandamus which granted the relief as prayed for in the petition.

This opinion has been prepared and is now filed for the purpose of stating the reasons for the entry by this Court of its order of May 2, 1966, which awarded the writ as prayed for by the petitioners.

The material facts are not disputed and the questions presented for decision are questions of law.

On April 5, 1966, the defendant County Court of Logan County, by order effective on that date, but after the list of election officers whose appointment was requested by the petitioners was presented, changed and redistricted the three then existing magisterial districts of Chapmanville District, Triadelphia District and Logan District, of Logan County, and relocated their boundaries so as to increase the number of magisterial districts to four, continued the names of Triadelphia District and Logan District, changed the name of Chapmanville District to Guyan District, and created a new district designated as Island Creek District. The effect of the foregoing change in the magisterial districts was more nearly to equalize the disproportionate population

of the three former magisterial districts among the four districts effected by the order of April 5, 1966, which, however, did not change or disturb the boundaries of any of the precincts in any of the magisterial districts. The change in the magisterial districts also removed the residence of three members of the executive committee from the magisterial district from which each of them was elected as a member of such committee. The validity of the foregoing order changing the magisterial districts and redistricting the county is not involved in this proceeding and it is here mentioned and referred to solely for the purpose of showing its connection with and its relation to the questions presented for decision.

The petitioners and Raymond Chafin constituted the complete membership of the Logan County Democratic Executive Committee, each of them having been elected to membership on such committee from one of the three magisterial districts before the foregoing change in such districts by the action of the county court on April 5, 1966, and at a meeting of the Logan County Democratic Executive Committee attended by all its members on April 4, 1966, it approved by a vote of five to one, Chafin dissenting, a list of designated eligible persons to serve as Democratic election commissioners and clerks for each of the election precincts of Logan County at the Primary Election to be held on May 10, 1966.

The writing or list which contained a request that the persons designated be appointed by the county court as such election officers was signed by all the members of the executive committee except Chafin and the executive committee then directed its chairman, the petitioner David W. Mullins, to present and file the writing or list with the County Court of Logan County in behalf of the executive committee at a meeting of the county court scheduled to convene at 10:00 o'clock on the morning of April 5, 1966. At that meeting the petitioner Mullins, as chairman of the executive committee and in its behalf, presented and filed the foregoing list of persons for appointment as election officers to serve at the primary Election.

Before considering or acting upon the list presented by the petitioner Mullins the county court proceeded to alter and change the magisterial districts of the county, as previously indicated, and after completing that action the county court received and took under advisement the list of the Logan County Democratic Executive Committee and recessed the session until 7:00 o'clock that evening. At that time it reconvened and, after having been advised by the assistant prosecuting attorney of Logan County that it had the authority to reject the lists submitted by the Democratic and Republican Chairmen on the ground that the executive committees of both parties were improperly constituted under the Constitution of the United States and the Constitution of West Virginia and for the additional reason that, upon the recommendation of the clerk of the county court, after his consultation with the office of the prosecuting attorney of Logan County, the county court found that 47 persons included in the list of the Logan County Democratic Executive Committee were not qualified to serve as such election officers. By a vote of two to one, the county court then rejected the list filed by the petitioner Mullins and the list filed by the chairman of the Logan County Republican Executive Committee. Later in the session, however, it adopted the list presented by the chairman of the Logan County Republican Executive Committee and, by a vote of two to one, adopted as its own list another and different list of Democratic election officers which had been prepared by someone other than the Logan County Democratic Executive Committee and appointed as Democratic precinct election officers the persons named in the list adopted by the county court.

The County Court of Logan County did not conduct any independent or formal hearing or examine any witnesses or consider any testimony with respect to the qualification of any of the persons designated in the list of the Logan County Democratic Executive Committee whom it found to be disqualified to serve as precinct election officers but apparently relied upon the ex parte report or recommendation of its clerk, who alone or in connection with the office

of the prosecuting attorney undertook to investigate and determine the qualification of the 47 persons involved between the hours of 10:00 o'clock in the morning and 7:00 o'clock in the evening of April 5, 1966.

With respect to the question of the qualification of the persons designated in the list of the Logan County Democratic Executive Committee signed by five of its six members and its chairman, the petition alleges that by the writing or list prepared and presented in its behalf it requested the appointment by the county court of certain eligible persons designated in such writing to serve as Democratic election commissioners and clerks for each of the election precincts of Logan County at the Primary Election to be held on May 10, 1966; and this allegation as to persons eligible for appointment to serve as such election officers, not having been sufficiently denied, should be and it is accepted as true.

The principle is well established by the decisions of this Court that by virtue of Section 28, Article 1 (formerly Section 15, Article 4), Chapter 3, Code, 1931, as amended, the county court of every county is authorized and empowered to appoint, subject to certain limitations and restrictions, all commissioners and clerks to serve as such at each voting precinct in the county at any primary election in such county; but that if the county executive committee of an eligible political party complies with the applicable provisions of the statute in presenting to the county court of any county a writing signed by the committee or its chairman or secretary in its behalf requesting the appointment of a qualified voter of such party, who is otherwise qualified to serve as an election officer, for one commissioner and one clerk for each board of election officers at each voting precinct in the county at a primary election, it is the duty of the county court to make the requested appointment of each of such persons; and that mandamus lies to compel the county court to appoint the persons designated by the executive committee. *State ex rel. Evans* v. *Kennedy,* 145 W. Va. 208, 115 S. E. 2d 73; *State ex rel. Bell* v. *The County Court of Clay County,* 141 W. Va. 685, 92 S. E. 2d 449;

*State ex rel. Bullard* v. *County Court of Clay County*, 141 W. Va. 675, 92 S. E. 2d 452; *State ex rel. Forsythe* v. *The County Court of Cabell County*, 131 W. Va. 570, 48 S. E. 2d 412; *Gainer* v. *County Court of Calhoun County*, 120 W. Va. 409, 199 S. E. 878; *State ex rel. Wilson* v. *County Court of Wayne County*, 92 W. Va. 71, 114 S. E. 509; *Franklin* v. *The County Court of McDowell County*, 86 W. Va. 479, 103 S. E. 330. This Court has also held that the county court may not shift such persons from commissioner to clerk or from clerk to commissioner, or transfer them to a separate list of election officers selected and appointed by it, or select or appoint any other person to serve in the place and stead of any qualified person designated by the executive committee of an eligible political party. *State ex rel. Bullard* v. *County Court of Clay County*, 141 W. Va. 675, 92 S. E. 2d 452; *State ex rel. Forsythe* v. *The County Court of Cabell County*, 131 W. Va. 570, 48 S. E. 2d 412; *State ex rel. Wilson* v. *County Court of Wayne County*, 92 W. Va. 71, 114 S. E. 509.

It clearly appears from the record in this proceeding that the petitioners, consisting of a majority of the members and the chairman of the Logan County Democratic Executive Committee, have fully complied with the requirements of the applicable statute, Section 28, Article 1, Chapter 3, Code, 1931, as amended, and consequently were and are entitled to the writ of mandamus heretofore awarded by this Court by its order of May 2, 1966.

In opposition to the issuance of the writ in this proceeding the defendants, in substance, contend (1) that the provisions of Section 9, Article 1, Chapter 3, Code, 1931, as amended, violate the provisions of Article II, Section 4, of the Constitution of West Virginia and the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States in their application to the Logan County Democratic Executive Committee; (2) that an executive committee of a political party is vested with sovereign power and its members are public officers; and (3) that the Logan County Democratic Executive Committee, being composed of members who occupy no other or higher status than de facto members, are without authority to request

the appointment of persons to serve as election officers in each voting precinct at the Primary Election on May 10, 1966.

Each of the foregoing contentions is devoid of merit and must be and is rejected by this Court.

The Supreme Court of the United States in a series of cases beginning with *Baker* v. *Carr*, 369 U. S. 186, 82 S. Ct. 691, 71 L. Ed. 2d 663, has held that the courts have jurisdiction to determine the constitutionality of statutes which provide for the selection of legislators on the basis of unequal population apportionment and have declared such statutes unconstitutional as violative of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States, that seats in the legislative branch must be apportioned substantially upon a population basis, and that political equality means one person one vote. *Gray* v. *Sanders*, 372 U. S. 368, 83 S. Ct. 801, 9 L. Ed. 2d 821; *Wesberry* v. *Sanders*, 376 U. S. 1, 84 S. Ct. 526, 11 L. Ed. 2d 481; *Reynolds* v. *Sims*, 377 U. S. 533, 84 S. Ct. 1362, 12 L. Ed. 2d 506; *WMCA, Inc.* v. *Lomenzo*, 377 U. S. 633, 84 S. Ct. 1418, 12 L. Ed. 2d 568; *Maryland Committee for Fair Representation* v. *Tawes*, 377 U. S. 656, 84 S. Ct. 1429, 12 L. Ed. 2d 595; *Davis* v. *Mann*, 377 U. S. 678, 84 S. Ct. 1441, 12 L. Ed. 2d 609; *Roman* v. *Sincock*, 377 U. S. 695, 84 S. Ct. 1449, 12 L. Ed. 2d 620; *Lucas* v. *Forty-Fourth General Assembly of State of Colorado*, 377 U. S. 713, 84 S. Ct. 1459, 12 L. Ed. 2d 632; *Hearne* v. *Smylie*, 378 U. S. 563, 84 S. Ct. 1917, 12 L. Ed. 2d 1036; *Pinney* v. *Butterworth*, 378 U. S. 564, 84 S. Ct. 1918, 12 L. Ed. 2d 1037; and *Hill* v. *Davis*, 378 U. S. 565, 84 S. Ct. 1918, 12 L. Ed. 2d 1037.

This Court, in *Robertson* v. *Hatcher*, 148 W. Va. 239, 135 S. E. 2d 675, and *State ex rel. Smith* v. *Gore*, 150 W. Va. 71, 143 S. E. 2d 791, has held that statutes providing for the election of members of the Legislature and delegates to a State constitutional convention which fail to provide for equal representation in the election of such officers violated the provisions of the Constitution of this State.

It has also been held by some courts that the doctrine of political equality of one person, one vote, applies to the

election of public officers in political subdivisions of the State. See *Ellis* v. *Mayor and City Council of Baltimore,* 234 F. Supp. 945; *Bailey* v. *Jones,* ____ S. D. ____, 139 N. W. 2d 385; *State ex rel. Sonneborn* v. *Sylvester,* 26 Wis. 2d 43, 132 N. W. 2d 249; *Seaman* v. *Fedourich,* 16 N. Y. 2d 94, 262 N. Y. S. 2d 444, 209 N. E. 2d 778.

None of the above cited cases, however, has held that officers who were elected on the basis of unequal apportionment of population were without power or authority to continue to function or that their official acts were invalid or void. On the contrary the courts have permitted officers so elected to continue to function and discharge the duties of their offices until the malapportionment basis on which they were elected is corrected by proper reapportionment by the legislative branch or until it has had a reasonable opportunity to make such reapportionment. *Bailey* v. *Jones,* ____ S. D. ____, 139 N. W. 2d 385; *Jackman* v. *Bodine,* 43 N. J. 453, 205 A. 2d 713.

In the *Bailey* case the Supreme Court of South Dakota, in holding unconstitutional a statute which provided for the election of county commissioners on an unequal apportionment population basis and that the right to vote must be on the one person one vote principle, with respect to the power and authority of such commissioners to discharge the duties of their office, said: "The granting of other relief is governed by equitable principles and since the primary responsibility of apportionment rests with the legislature, corrective relief should be deferred to give it opportunity to enact a constitutionally valid apportionment or districting plan for the election of county commissioners and provide for orderly transition of the governmental powers to such commissioners. Until that time, to assure continuity of county government the present Board of County Commissioners shall continue to function. Commissioners whose terms expire in January 1967 shall be nominated and elected for the interim in accordance with presently existing laws unless legislation providing for nomination of county commissioners becomes effective prior thereto. The court below shall retain jurisdiction and entertain an application by

interested parties for further and appropriate relief if by March 31, 1967 corrective legislation has not been enacted."

In the *Jackman* case the Supreme Court of New Jersey held that the Legislature of that state, even though constituted in violation of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States, could exercise legislative power subject to the duty to bring the legislative branch into harmony with the Federal Constitution, and in the opinion used this language: "We need not explore the abstract question whether a legislature, thus constituted in violation of the equal protection clause, can exercise the legislative power. The answer is provided abruptly by sheer necessity. The familiar doctrine which prevents collateral attack upon past acts of '*de facto*' officials rests upon an underlying need for governmental order. That need is even more imperative when the spectre proposed is a government without legislative power. The answer must be that the legislators continue in office with the powers of their branch of government, subject however to the duty of the State to bring the legislative branch into harmony with the Federal Constitution with diligence."

Section 9, Article 1, Chapter 3, Code, 1931, as amended, relates to the composition and organization of committees of political parties and, as to the county executive committee of a political party, provides that at the May Primary Election in 1964 and in every succeeding four years the voters of each political party in each magisterial district of the county shall elect one male and one female member of the county executive committee for such party; that its members shall reside within the county, district or ward from which chosen; that the term of the members of such executive committee shall begin on the first day of June following the May Primary and shall continue four years and until their successors are elected and qualified; and that such committee shall convene as soon as possible after the first day of June following its election and select a chairman, a treasurer, a secretary and such other officers as such committee may desire.

Though such county executive committee and other committees for political subdivisions are created by statute, the statute does not specify the power or the duty of any such committee, except the statute relating to the State executive committee of a political party which is authorized and empowered to make rules for the government of the party and to engage in other specified activities. An executive committee of a political party, however, is authorized, in case a vacancy shall occur in the party nomination of candidates for office caused by the death, withdrawal, failure to make the nomination for office at the Primary Election or otherwise, to fill such vacancy and certify the name of the candidate of the political party for the political subdivision in which such vacancy occurs.

Notwithstanding the statutory status of the members of a county executive committee of a political party and the status of such committee as a governmental agency, according to the weight of authority, the members of such political committee are not regarded as public officers. In 29 C. J. S., Elections, Section 85a, the text contains this language: "Officers of a political party, although provided for by statutory law, may not be regarded as public or governmental officers; and ordinarily, in the absence of statute covering the matter, committees of any political party, in acting for the party's interests, are not acting as officers of the state. So, the position of party committeemen is not usually regarded as constituting a public office, under the view that such position is merely a party position, carries with it no salary, fees, or emoluments, and such committeemen represent the members of political parties, are accountable to them alone, are not required to qualify as are other officers, and do not represent the public at large or exercise any of the sovereign powers of the state." See *Williamson* v. *Montgomery*, 185 Ark. 1129, 51 S. W. 2d 987; *Tuck* v. *Cotton*, 175 Ark. 409, 299 S. W. 613; *McLendon* v. *Everett*, 205 Ga. 713, 55 S. E. 2d 119; *Morris* v. *Peters*, 203 Ga. 350, 46 S. E. 2d 729; *People ex rel. Kell* v. *Kramer*, 328 Ill. 512, 160 N. E. 60; *People ex rel. Brundage* v. *Brady*, 302 Ill. 576, 135 N. E. 87; *Opinion of the Justices*, 347 Mass. 797, 197 N. E. 2d 691; *Kidder* v.

*Mayor of Cambridge,* 304 Mass. 491, 24 N. E. 2d 151; *Attorney General* v. *Drohan,* 169 Mass. 534, 48 N. E. 279, 61 Am. St. Rep. 301; *Attorney General* v. *Barry,* 74 N. H. 353, 68 A. 192; *Commonwealth ex rel. Koontz* v. *Dunkle,* 355 Pa. 493, 50 A. 2d 496, 169 A. L. R. 1277; *Greenough* v. *Lucey,* 28 R. I. 230, 66 A. 300; *Heiskell* v. *Ledgerwood,* 144 Tenn. 666, 234 S. W. 1001. There is, however, authority to the effect that a committeeman is a public officer to the extent that he is charged with the duty of performing certain functions of government; that though such member is not an officer in the same sense that the governor of a state is an officer, the position of a member of such committee is a public office when so referred to in the statute creating the position. Some of the cases which adopt the minority view that committeemen of a political party are public officers are *State ex rel. Wright* v. *Carter,* Kansas City Court of Appeals, 311 S. W. 2d 580; *Noonan* v. *Walsh,* 364 Mo. 1169, 273 S. W. 2d 195; *State ex rel. Dawson* v. *Falkenhainer,* 321 Mo. 1042, 15 S. W. 2d 342; *State ex rel. Merrill* v. *Gerow,* 79 Fla. 804, 85 So. 144.

In *McLendon* v. *Everett,* 205 Ga. 713, 55 S. E. 2d 119, the court held that "An officer, member, or employee of a political committee is not a 'public officer.' " In *Morris* v. *Peters,* 203 Ga. 350, 46 S. E. 2d 729, the court held in point 1 of the syllabus that the office of chairman of the State Democratic Executive Committee of Georgia is not a public office of the State within the ordinary acceptation of that term, but is merely an office of the political party. In *People ex rel. Kell* v. *Kramer,* 328 Ill. 612, 160 N. E. 60, the court held that "Political party committeemen are not public officers, not being required to give bond or take oath, and do not represent the public at large or exercise any of the sovereign powers of the state but represent and are accountable only to members of political parties." In *Kidder* v. *Mayor of Cambridge,* 304 Mass. 491, 24 N. E. 2d 151, the court said that "Membership in a committee of one political party or another does not constitute public office." In *Attorney General* v. *Drohan,* 169 Mass. 534, 48 N. E. 279, 61 Am. St. Rep. 301, the court held that "The fact that the

legislature has, by statute, regulated the election and conduct of political committees, the members of which are the officers of the party which selects them, and whose duties are confined to the party to which they belong, has not made the office of committeeman a public one." Though an executive committee of a political party is created and the election and conduct of its members are regulated by statute, a member of such committee is not, for that reason, a public officer. 25 Am. Jur. 2d, Elections, Section 124;·42 Am. Jur., Public Officers, Section 30.

This Court subscribes to the majority rule and holds that the members of the Logan County Democratic Executive Committee and its chairman do not occupy the status of and are not public officers.

Inasmuch as committeemen of a political party are not public officers and inasmuch as the cited cases recognized and applied the principle of one person one vote only to the election of public officers and as no case has been called to the attention of this Court in which that principle, though logically consistent, has been recognized or applied to the election of members of a committee of a political party, it will not be said that such principle applies to or affects the status of the petitioners as members of the Logan County Democratic Executive Committee, who, without question, were elected as members of such committee on a manifestly unequal population basis from districts which were then malapportioned. But even if that principle did apply to them it would not deprive them of their office as such committeemen or affect, impair or invalidate their right to function as such members or limit or nullify their power or authority to perform and discharge the duties of their office as members of such executive committee. Accordingly, the action of the committee in preparing and submitting its list of election officers and requesting their appointment as such by the county court was within its power and authority and such list was, in all respects, a valid and effective list.

The change in the boundary lines of the magisterial districts effected by the order of the county court of April

5, 1966, which excluded or removed the residence of three of the members of the county executive committee of the Democratic Party from the district in which each of them was elected, did not affect the incumbent member or his right to the office of a member of such county executive committee. The members of the county executive committee continue in office, as provided by statute, as members of such committee for the four-year term to which they were elected and until their successors are elected and qualified, and that eventuality has not yet occurred. *Williamson* v. *Killough,* 185 Ark. 134, 46 S. W. 2d 24. See *State ex rel. Connally* v. *Haverly,* 62 Neb. 767, 87 N. W. 959; *State ex rel. Norwood* v. *Holden,* 45 Minn. 313, 47 N. W. 971; *Olsen* v. *Merrill,* 78 Utah 453, 5 P. 2d 226.

The opinion in the *Williamson* case contains these pertinent statements:

"While the members of the committee are elected in the township or city ward in which they reside, they become, upon their election, members of the county committee, and the authorities appear to be unanimous that, after such election, the right to discharge the functions of a committee-man is not affected by a subsequent change of boundary lines which would place the residence of the committeemen in another township or ward, and this change of lines does not automatically or otherwise affect the incumbent, but the committeeman, if he remains otherwise eligible, continues as such until his successor is elected pursuant to the provisions of the law regulating the election."; and

"The controlling legal principle is that the committeemen were elected at an election made legal by the primary election law, and for a definite time, not yet expired, and it is true also that upon their election they become county committeemen, although elected by townships or wards. Their functions are not confined to the township or ward in which they reside, but they, in conjunction with other committeemen similarly elected, are committeemen for the county, and changes in the lines of their townships or wards do not affect their eligibility, for the reason that such changes are

prospective in their nature so far as the incumbents affected are concerned."

From the cited authorities it is obvious that a change in the boundary lines of a magisterial district of a county which places the residence of a member of a county executive committee of a political party in a district other than that from which he was elected does not affect the incumbent, or vacate his office as a member of such committee, or terminate or impair his power and authority to function, or to perform and discharge his duties as such member, and he continues as a member of such committee until the expiration of the term for which he was elected and until his successor is elected and qualified.

As the petitioners have a clear legal right to the relief which they seek in this proceeding they were entitled to the writ of mandamus heretofore awarded against the defendants by this Court by its order entered May 2, 1966.

*Writ awarded.*